JUNE 1821.

Bowie
vs
O'Neale

## COURT OF APPEALS, JUNE TERM, 1821.

### Bowie *vs.* O'Neale, *et al.* Lessee.

*A defendant in ejectment being in possession of the land for which the suit is brought, holding the same by a claim of title adverse to that of the plaintiff for twenty years or more, is not necessarily entitled to a verdict.*

*The will of a husband does not pass his wife's land, and no possession of the same, by a devisee, under the will, can create a presumption of title.*

*The evidence given by a deceased witness in a former trial of the same cause, and on the same issue, may be proved in a subsequent trial, but not the legal effect of such evidence*

*The depositions of witnesses on the survey, where they are dead, are competent evidence, and the surveyor is a competent witness to prove where such witnesses were sworn on the survey.*

APPEAL from *Prince-George's* county court. Ejectment brought in the name of *Lawrence O'Neale's* lessee against *John F. Bowie*, on two demises; one for a tract of land called *Twinn*, or *Trivifer*, or *Twiford*, lying in *Prince-George's* county; and the other for a moiety of the same land. *Lawrence O'Neale* having died, his heirs and widow were made parties, lessors of the plaintiff; and *John F. Bowie* having also died, his devisee was made defendant; defence was taken on warrant, and plots made and returned.

1. At the trial, the plaintiff read in evidence a patent granted to *George Collins*, for the tract of land called *Twiver*, dated the 1st of August 1673, for 440 acres of land, and the will of *George Collins*, dated the 20th of December 1683; in the will no mention was made of the land. He also read the will of *William Selby*, dated the 5th of November 1698, whereby he devised, amongst other property, unto his daughter *Amie Hucker*, the tract of land called *Twyford*, containing 100 acres. Also the will of *Robert Hooker*, dated the 20th of April 1711, devising to his son *Samuel Hooker* 100 acres of land, part of *Twiver*, willed to his wife *Amy Hooker* by her father *William*

*Selby.* A deed from *Samuel Hooker*, and wife, to *George Pouncey*, dated the 15th of March 1720, for the land called *Twyford*, containing 245 acres. A deed from *George Pouncey* to *Paul Hoye*, dated the 19th of February 1722, for the land called *Twiford*, containing 440 acres. The will of *Paul Hoye*, dated the 7th January 1727-8, devising the land called *Twifer* to his eldest son *James Hoye*. A deed from *Cephas Hoye* to *Thomas Contee Bowie*, dated the 25th of January 1791, for the land called *Twyver*, containing 112 acres, which had belonged to his father *Dorset Hoye*. A deed from *Thomas Contee Bowie* to *Lawrence O'Neale*, the original lessor of the plaintiff in this cause, dated the 26th of December 1796, for the last above mentioned land called *Twifer*. Also the plot and explanations returned in the cause, together with the depositions of *Thomas Contee, Thomas Earley, Joseph Ryan, Grace Hoye,* and *William Sanbury*, all of whom were admitted to be dead. And the depositions of *John M'Gill*, surveyor of *Prince-George's*, to prove where the said witnesses were sworn, as marked on the plots. He also gave in evidence a copy of the rent rolls for *Prince-George's* county to wit.

Acres. yearly rent

440   17   4   *Twiver* surv. 26th May 1678, for *George Collins*, at a bounded white oak near adjoining to the land *Farme*. Possessrs. 30*a. Jos. Harris.* 50*a. Thomas Palmer.* 100*a. Robt. Hooker.* 100 *Wm. Rodery.* 100*a. Robert Bowan*, to be paid by *Jos. Harrison.* 70*a. Wm. Rons*, to be paid by do. *Twiver* surv. 26th May 1678, for *George Collins*, at a bound white oak near adjoining to the land called *Orchard*, in a line of the land called *Farme.* Possessrs. 150—0 6 0 *Robert Hooker's* heirs. 132—0 5 3½ *James Russell.* 100—0 4 0 *Thomas Hodgkin.* 150—0 6 0 *Samel Hyde's* heirs. 100—0 4 0 *Wm. Deacon*, 30—0 1 2¾ *Thomas Dorsett.*

[*Alienations.*]

43 1 9   *George Harris*, from *Wm. Austin* & wife, 1 Aug. 1706.

154 6 2   *Jno. Bradford* from *Wm. Austin* & wife, 17 July 1710.

*Robt. Bradley* from *Jno. Taney Hill*, 15 Nov. 1710.

100 4 0   *Josiah Wilson* from *Wm. Rothery*, 7 Mar. 1710.

June 1821. 180 7 2     *Jereh. Sampson* from *Josiah Wilson*, 15 Mar.
Bowie                    1714.
vs
O'Neale      180 7 2     *Roger Boyce* from *Jereh. Sampson*, 15 Apl.
                         1717.

             245 9 10    *George Pouncey* from *Saml. Hooker, et ux.*
                         15 Mar. 1720.

                         *Joshua Cecil* from *Wm. Collins*, 29 June 1706.

             28 1 1½     *Gunder Errikson* from *Isaac Cecil*, 4 Aug.
                         1722.

             337 6 9     *Rd. Read* from *Robt. Hooker*, 7 Decr. 1724.
             59 2 4½     *Rd. Read* from *John Bowen*, 6 May 1725.
             150 6 0     *Saml. Heyde* from *Jno. Bradford*, 11 Feb.
                         1733.

                   Resd. into *Reed's Farm.*
                   Resd. into part of *Twiford*, folio 105.
                   Resd. into *Twiford*, folio 111.
                   Resd. into part of *Twiford*, folio 120.

             100 0 4 0   Formerly escheated by *Rd. Read* and *John*
                         *White*, & called *Read's Pasture*, but ne-
                         ver patented; now escheated by *Colmore*
                         *Beanes* & called *Beanes' Pasture.*

             150 0 6 0   *Wm. Mackey* from *Edward Tilghman*, 27
                         Dec. 1756.

                         *Thos. Contee* from *Paul Hoye.*

             35 0 1 5½   Resd. & Escheated into *Harrison's Lot.*—
                         *John Harrison* from *Thos. Contee* & Wife,
                         20th October 1767.

             Also a copy or extract taken from the assessment books
             of said county for the years 1789, 1790 and 1796, viz.
                                               Amt.    Assesst.
             *Hoye, Cephas*                     57      10 10½
                                          Quantity.  Pr.   Amt.
             *Thos. Contee Bowie,*—pt. of *Twiver*   112   1 1 6   64 8

He also proved, that the patent and deeds above men-
tioned were correctly located upon the plots. The defen-
dant then read in evidence, a deed from *Robert Hooker* to
*Fielder Bowie*, dated the 27th of March 1778, for all his
right to a tract or parcel of land, being part of a tract cal-
led *Twiver*, containing by patent 440 acres, and patented
in the name of *George Collins*, and being the northermost
part of said land called *Twiver*, and containing 200 acres
more or less; and gave evidence that the same was cor-
rectly located upon the plots. He also offered in evidence

a deed from *Robert Hooker* to *Richard Read* dated the 7th
of December 1724, for all his right to all or any part of a
tract of land formerly called *Twiford*, lately resurveyed by
*Richard Read*, and called *Reed's Farm*, and containing 337
acres more or less. Also a deed of mortgage from *Fielder
Bowie* to *John F. Bowie*, the original defendant in this
cause, dated 20th of October 1789, for all the land pur-
chased of *Robert Hooker;* and also offered proof that a de-
cree for the sale of the mortgaged premises in said deed
mentioned, having been passed by the court of chancery,
*Thomas C. Bowie* was appointed trustee for making said
sale, and that the same was sold in pursuance of said de-
cree, and the original defendant in this cause became the
purchaser; and that a deed was executed to him by said
trustee, dated the 7th of September 1808, for *Reed's Farm*,
part of *Twyver*, purchased by said *Fielder Bowie* of *Robert
Hooker*. The defendant then prayed the court to instruct
the jury, that upon this evidence the plaintiff was not enti-
tled to recover. But the court, [*Key* and *Plater*, A. J.] re-
fused to give the direction; but were of opinion, and so in-
structed the jury, that if they should believe from the evi-
dence that the deed from *Robert Hooker* to *Fielder Bowie*
was correctly located upon the plots, and that *Fielder Bowie*,
and those under whom he claimed the land in question,
were in possession thereof, and used and occupied the same
by a title or claim of title adverse to that of the plaintiff,
for twenty years or upwards before suit brought, that then
they ought to find a verdict for the defendant for said land,
or so much thereof as they should find to have been so held.
The defendant excepted.

2. The plaintiff then, to prove that *Dorsett Hoye* died in
possession of the land located by the plaintiff, and during
his life possessed and cultivated the same, offered in evi-
dence the depositions, taken on the survey and returned
with the plots, of *Thomas Contee*, aged upward of 80 years,
*Thomas Early*, *Joseph Ryan*, *Grace Hoye* and *William
Sansbury*. All of whom it was admitted were dead. The
defendant objected to this evidence, but the court over-
ruled the objection, and permitted the depositions to be
read.

The plaintiff then swore *John McGill*, the surveyor of the
county, to prove where said witnesses were sworn—The de-

June 1821.<br>Bowie<br>vs<br>O'Neale

fendant also objected to his testimony; but it was admitted, and the whole of it delivered to the jury.

The defendant then offered to prove by a competent and legal witness, that when a jury was formerly empannelled to try this cause, *Eversfield Bowie* who had been examined on the survey and who is since dead, and who was sworn in court at the time, stated that the land had been in the possession of and cultivated by *Fielder Bowie* for a number of years, and as far as the witness could remember, that he died in the seisin and possession thereof, and that it descended to his son *Allen Bowie*, who also took possession, cultivated it until his death, and died seised of it, and that after his death the same being descended to his infant son, *Thomas C. Bowie*, his guardian entered upon the land, cultivated it for his ward, and continued in the possession of it until it was sold under a decree of the chancery court as before stated. But the court was of opinion that the whole of this last testimony was illegal, and would not suffer any part of it to be offered to the jury. The defendant excepted.

3. The defendant then prayed the court to instruct the jury, that the wills of *William Selby* and *Robert Hooker*, (the latter dated in 1711,) did not pass to the devisees the estates of the wives of the respective testators, and that no possession by the devisees mentioned in said wills, under said wills, of a part of *Twiver*, can create a presumption of title; and that the presumption arising from the possession was rebutted by the wills. But the court refused to give the instruction. The defendant excepted, and the verdict and judgment being against him he prosecuted this appeal.

The cause was argued before BUCHANAN, EARLE and DORSEY, J. *(a)*.

*Magruder*, for the appellant, cited 1 *Phillip's Evid* 199.

*Stephen*, for the appellee. Upon the first bill of exceptions cited 1 *Bac. Ab. tit. Baron & Feme*, (J.) 496. *Plummer et al. Lessee vs. Lane et al.* 4 *Harr. & M'Hen.* 72. *Carroll et al. Lessee vs. Norwood*, 4 *Harr. & M'Hen.* 287; and *Lewis's Lessee vs. Waters*, 3 *Harr. & M'Hen.* 430, 433. On the second bill of exceptions he cited 1 *Phillip's Evid.* 174, 199.

*(d)Chase*, Ch J. and *Martin*, J. absent, *Johnson*, J. having been counsel did not sit.

He afterwards admitted that the opinions in the *first* and *third* bills of exceptions were erroneous.

DORSEY, J. delivered the opinion of the court. The counsel for the appellee having admitted that there was error in the opinions of the court below, as declared in the *first* and *third* bills of exceptions, it is only necessary for the court to decide on the *second*—and we have no doubt, that if a witness who has been examined in the trial of a cause should die, and a new trial should be had in the same cause, and on the same issue, after his death, the testimony which he gave on the first trial may be proved on the second.

The necessity of the case renders the admission of such proof indispensable, and no injustice can result from the adoption of the rule, as the testimony of the deceased witness was not only given under oath, but was given judicially in the trial of the cause between the same parties and on the same issue, and the person to be affected by the testimony enjoyed the invaluable right of cross examination. The rule is accompanied by limitations, which render it subservient to the purposes of justice alone. The evidence given to the jury by the deceased witness, must be proved, and it will not be sufficient that .the witness should give his own inference, or depose to the legal effect, as the jury alone are competent to draw conclusions of fact from testimony.

In this case, the appellant below offered to prove by a competent and legal witness, "that when a jury was formerly empannelled to try this cause, *Eversfield Bowie,* who had been examined on the survey, who is since dead, and who had been sworn in court on the said trial, proved that the land had been in the possession of, and cultivated by *Fielder Bowie,* for a number of years, and that, as far as the witness could remember, he died in the seisin and possession thereof," and so forth.

It is most evident then, that the witness was not produced for the purpose of proving the effect of the testimony given by the deceased witness, but to declare on oath what he did actually prove.

Whether the testimony which the witness would have given, if the court had permitted him to have been sworn and examined, would have been legally admissible, it is

impossible to anticipate, but as he was tendered for the purpose of giving testimony which was legal, he ought to have been heard, and then his proof, be it what it might, would have been a fair subject for judicial examination.

The court do not mean to intimate an opinion, whether any of the facts which the appellant offered to prove in the manner stated in the bills of exceptions, were or were not legally the subject of traditional proof.

The court therefore dissent from the opinion of the county court, as expressed in the *second* bill of exceptions, and reverse their judgment.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.