Rogers' Lessee *vs.* Raborg and Redding.—*December*, 1829.

It is a settled rule of evidence, that if a person who has been regularly sworn and examined on the ground, upon a survey executed in an action of eject-ment, dies before the cause is tried, or leaves the State, and goes to parts unknown and without the reach of the process of the State, so that his attendance as a witness cannot be procured, his deposition so taken, and returned with the plots, may be read in evidence at the trial from necessity.

So the deposition of a witness sworn and examined under the same circum-stances, and who had become paralytic since his examination, and though regularly summoned, was unable to leave his house, or to speak so as to be understood, may also be read in evidence at the trial, for the same reason.

Locations made by a lessor of the plaintiff in an action of ejectment, as, and for his claim and pretensions to a tract of land, being transferred to the plots in another action of ejectment, brought against those claiming under the lessor in the first action, and who took defence for the same tract in the second action, are competent, though not conclusive evidence for the plaintiff in the second action, to shew the true location of such tract, although the first action was dismissed.

Where boundaries called for in a grant can be established, it is a settled prin-ciple of construction, that the courses and distances expressed, are to be disregarded, and the lines run to the boundaries, according to the calls.

The patent for a tract of land described it as follows : " lying in the county aforesaid, on the head of the N. W. branch of P. river, and joining the S. W. side of B town, and *on a tract of land called* L, beginning at a bounded red oak tree, standing near a bounded locust post, which post is the beginning boundary of B town, and running thence, &c." the different lines by course and distance, without calls.   HELD, that upon the true con-struction of this patent, neither the first, nor any other line of the tract grant-ed by it, has a call to the first, or any other line of the tract called L, and that the word "*joining,*" as there used, is not of such imperative and binding force, as that the said tract must be so located as to join L, but that the beginning tree being ascertained, the location of the land from that tree, must be governed by the particular description given in this case, by courses and distances, they having no calls or binding expressions to control them.

APPEAL from *Baltimore* County Court.

*Ejectment* for a tract of land called "*Widow's Assistance.*" The declaration contained a count on the demise of *Philip Rogers*, the lessor of the plaintiff, on the 1st of February, 1822, for fifteen years. The defendant, the appellee, appeared, entered into the common rule, took defence on warrant, and pleaded not guilty, to which issue was joined. A warrant of resurvey issued, and plots were returned. The defendant took defence for a tract of land called, "*Deep Point.*"

1. At the trial, the plaintiff read in evidence to the jury, the patent for the tract of land called "*Widow's Assistance,*" granted to *Henrietta Rogers*, on the 13th of January, 1767, and proved, that *Henrietta Rogers*, the patentee, died in the year 1790, when said land descended to the lessor of the plaintiff, as her heir at law. And also, that said land was held and claimed by them, and partly occupied by the tenants of the said *Philip*, until the year 1819, when the defendants extended their fence within said land, as denoted by three black dots, as shown on the plots in this cause. The plaintiff also gave evidence, that one *Jacob Brown*, had been sworn and examined, as a witness for him upon the survey made in the cause; that he had at that time shown to the sheriff and surveyor, the objects and matters, stated in the surveyor's explanations to have been shown by said *Brown*, and located on the plots in this cause, as so shown; and also gave evidence, that the deposition in writing of said *Brown*, was taken by the sheriff upon the said survey, which deposition was returned to the court by the sheriff, with the plots; and also, that said *Brown* had been regularly summoned to attend this court as a witness for the plaintiff in this cause. And further gave evidence, that since the taking of said deposition, the said *Jacob Brown* has become, and still is, afflicted with a paralytic disease, which renders him unable to leave his house, and unable to talk so as to be understood; and the plaintiff thereupon offered to read the deposition of said *Jacob Brown* in evidence, to which the defendants objected,

and the Court, (Hanson, A. J.) being of opinion that said deposition was inadmissible, refused to let it go to the jury. The plaintiff excepted.

2. The defendants then read in evidence to the jury, the patent of a tract of land called *Deep Point*, granted to *John Frazier*, on the 20th of February, 1749, which said patent contains the following expressions: "We do therefore hereby grant unto him, the said *John Frazier*, all that tract or parcel of land called *Deep Point*, lying in the county aforesaid, on the head of the north west branch of *Patapsco* river, and joining the south west side of *Baltimore* town, and on a tract of land called *Lunn's Lot*, beginning at a bounded red oak tree, standing near a bounded locust post, which post is the beginning boundary of *Baltimore* town, and running thence, &c." And then made title to the said tract of land, by sundry mesne conveyances, through and under one *Alexander Frazier*. Whereupon the plaintiff offered to read in evidence, a duly attested copy of the record of proceedings in an action of ejectment, and of the plot and certificate of explanations therein, instituted by the said *Alexander* against *Cornelius Howard* and the said *Henrietta Rogers*, for the recovery of the same land called *Deep Point*, in the Provincial Court of *Maryland*, in the year 1772, in which the aforesaid tract of land is located, as the claim and pretension of the plaintiff in the action, for the purpose of showing by said plot and explanations, that said tract called *Deep Point*, was then surveyed and located by said *Frazier*, in that suit, in the same manner and position, as it is located on the plots in this cause; the plaintiff at the same time *offering* to prove by the surveyor, who made the plots in this cause, that the present location of the land, was transferred, and made from the locations of the same, as made on the plot in the proceedings so offered to be read in evidence; and further to show, the true original location of said tract of land. The defendants objected, and the court, (Hanson, A. J.) was of opinion, that the matters so offered in evidence, were inadmissible in law, for any of the pur-

poses stated; inasmuch as it appeared by the copy of the proceedings, that said *Frazier* had suffered a non-suit in said action, notwithstanding it appeared also, by said proceedings, that the judgment of non-suit therein, was rendered against said *Frazier*, for his default in not giving security for the costs, which the court had ruled him to give, and refused to permit the evidence to go to the jury. The plaintiff excepted.

3. The plaintiff, in addition to the evidence by him given and offered in the preceding bills of exceptions, gave in evidence, that a certain *Philip Hall,* in the year 1782 and 1783, being in possession of, and claiming title to said land, called *Deep Point,* executed leases for the several lots of the same land, fronting on the north side of *Pratt street,* which are located on the plots in this cause, to the persons whose names are written on the said lots, on which houses were erected by the lessees, as located on said plots; and that in the said leases, the said *Hall* calls and describes the lots to be, and to begin respectively at the number of feet therein expressed, East from where the first line of *Deep Point* intersects the North side of *Pratt street,* and that the said number of feet, in said leases severally expressed, as their several places of beginning, being reversely measured, extend from the said respective lots on the North side of *Pratt* street, and terminate at the red circle, on the plots aforesaid; and further proved, that *Alexander McKensie,* under whom the defendants claim, having become seized and possessed of said *Deep Point,* under the said *Alexander Frazier,* did, in the year 1818, sell and convey one of the aforesaid lots, which had been leased by said *Hall,* to *John Mickle,* and in the conveyance therefor, said *McKensie* describes the said lot to begin on *Pratt* street, at the distance of 52 feet East from the place where the first line of *Deep Point* intersects *Pratt* street; and also proved that 52 feet measured reversely from the beginning of said lot, would extend to the North side of *Pratt* street, and terminate at the said red circle; the purpose of which evidence was, to show,

that the location of the said first line of *Deep Point,* as shown and claimed by said *Alexander Frazier* in the aforesaid action, at the time thereof, was, and is the same, as that which the plaintiff hath given said line in this cause; and to show that the position and location of the said first line at its intersection, or crossing the North side of *Pratt* street, as claimed and described by said *Hall,* in the leases aforesaid, and as claimed and described by said *McKensie,* in his conveyance aforesaid, was, and is the same, as that which the plaintiff has given said line in the location thereof in this cause ; and also to show the true original location of said line and land. Whereupon the defendants produced and read in evidence to the jury, a patent for a tract of land called *Lunn's Lot,* granted to *Edward Lunn,* on the 20th of July, in the year 1673, and shewed the Court, from the plots in this cause, that the 16th line of *Lunn's Lot,* as located from red A on said plots in two ways, as shewn on said plots, and also, that *Deep Point* is located by them, as shewn on the plots, running its first line the entire length thereof, from red A, to red 126, with the said sixteenth line, according to the second location of that line, and that there is no other location of *Deep Point* on the plots, which runs the first line thereof, its entire length with the said sixteenth line. Thereupon the defendants prayed the opinion of the court, and their direction to the jury, that inasmuch as *Deep Point,* if run course and distance, will run into *Lunn's Lot,* as located by both plaintiff and defendant, and the grant of *Deep Point,* properly construed, calls to join on *Lunn's Lot,* that the first line of the tract called *Deep Point,* must run with an outline of *Lunn's Lot,* the extent of the distance of the first line of *Deep Point;* and the residue of the tract must be located, course and distance, with such an allowance for variation, as the jury might deem proper to make; and inasmuch as *Deep Point,* thus located, binding on *Lunn's Lot,* as located by either the plaintiff or defendant on the plots, covers the whole land in controversy in this cause,

that the plaintiff is not entitled to recover; to which construction of the patent of *Deep Point*, the plaintiff objected, and showed to the court, by the plots in this cause, that the defendants claim, for the tract called *Deep Point:* in their defence taken in this cause, a different position from that so taken. The court, (HANSON, A. J.) gave the following direction to the jury : the tract of land called *Deep Point*, must, in its first line, run joining on *Lunn's Lot*, the entire length of said line, and cannot run into it; and there being but two locations of *Deep Point* in this manner, by either of which, the claims and pretensions of the plaintiff, are covered by *Deep Point*, to which he sets up no title, the plaintiff is not entitled to recover.

The plaintiff excepted; and the verdict and judgment being against him, he prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*H. W. Rogers*, for the appellant, contended,

1. That the deposition of *Jacob Brown*, who was regularly sworn on the survey, and who was proved to have been rendered incapable of attending the trial, by an attack of paralysis, was admissible evidence. *Howard vs. Moale, et al*, 2 *Harr. and Johns.* 372. *Bowie vs. O'Neal*, 5 *Harr. and Johns.* 226. *Stewart vs. Mason*, 3 *Harr. and Johns.* 507.

2. The record and plot in the ejectment brought in 1772, by *Alexander Frazier*, under whom the defendants claim, for the tract of land called *Deep Point*, against *C. Howard* and *H. Rogers*, the ancestor of the plaintiff, being offered to show the manner in which *Frazier* located *Deep Point* as his claim, at that time, was evidence by which the jury might be governed, in their finding in this case, and the County Court erred in rejecting it. *Jarret vs. West*, 1 *Harr. and Johns.* 503. *Mason vs. Stewart, et al.*

3 *Harr. and Johns.* 507.   *Ridgely vs. Ogle and Leonard,* 4 *Harr. and M'Hen.* 123.

3. The direction of the Court that the patent for *Deep Point,* calls imperatively to bind on the line of *Lunn's Lot, the whole extent of the first line of Deep Point,* was erroneous; the binding expressions relating only to the beginning of *Deep Point,* and cannot be gratified to the whole extent of its first line, as that is contradicted by the call itself, for the south west side of *Baltimore Town.*

*Mayer,* for the appellees.

BUCHANAN, Ch. J., delivered the opinion of the Court.

This case is brought before us on three bills of exception taken at the trial; the first of which is to the refusal of the Court to permit a deposition, which was offered in evidence, to be read to the jury.

It is a settled rule of evidence in this State, that if a person who has been regularly sworn, and examined on the ground, upon a survey executed in an action of ejectment, dies before the cause is tried, or leaves the State, and goes to parts unknown, and without the reach of the process of the State, so that his attendance as a witness cannot be procured, his deposition so taken and returned with the plots, may be read in evidence at the trial from necessity, and being taken too by authority, and with the privilege and advantage of cross examination extended to the opposite party. Here the foundation laid for letting in the deposition of the witness, which appears to have been regularly taken on the survey, and returned with the plots, was, that he had since become paralytic, and though regularly summoned as a witness, was unable to leave his house, or to speak so as to be understood.   He was not indeed dead, nor had he gone out of the State, beyond the reach of the process of *Baltimore* County Court, in which the action was depending; but he was dead to all the purposes of giving evidence in a court of justice, and the benefit of his oral tes-

timony at the bar, was as much lost to the party, as if he had, in fact, been dead, or had left the State.

The necessity, therefore, of resorting to his deposition, was the same as if he had been dead, and the reason being the same, we think it ought to have been admitted. And more strongly than if he had left the State; his inability to give evidence being produced by the act of *God,* leaving to the party requiring the benefit of it, no means of obtaining it, and without any negligence or fault on his part, which may not always be strictly the case, in relation to a witness who has left the State.

We differ, too, with the Court below, in the opinion presented by the second exception, and think that Court erred in not permitting the appellant to give in evidence to the jury, the locations made by *Alexander Frazier,* in an action of Ejectment brought by him against *Cornelius Howard* and *Henrietta Rogers,* for the tract of land called *Deep Point,* as, and for, his claim and pretensions.

*Henrietta Rogers* was the patentee of the tract called *Widow's Assistance,* for which this suit was brought, and *Philip Rogers,* the lessor of the plaintiff, (who is the appellant,) is her son and heir-at-law, and claims under her. *John Frazier,* under whom *Alexander Frazier* claimed, was the patentee of *Deep Point,* and *Raborg and Redding,* the defendants, (who are the appellees,) claim under *Alexander Frazier.* The location of *Deep Point,* as made by *Alexander Frazier,* as and for his claim and pretension on the plats returned in the action, brought by him for that tract of land, against *Howard* and *Henrietta Rogers,* is transferred from those plots, to the plots returned in this cause. *Deep Point* being the elder tract, the right of the appellant to recover, depends, as that of *Alexander Frazier* did, in his action against *Howard* and *Henrietta Rogers,* upon the true location of that tract. And if that suit had proceeded to trial and verdict, and this was a case between *Henrietta Rogers* and *Alexander Frazier,* it cannot be doubted that the plots returned in that case,

and the location thereon by *Frazier* of *Deep Point*, might be given in evidence against him; it is the every day practice.    And as little can it be doubted that the same evidence might be given by the heir-at-law of *Henrietta Rogers*, against those claiming under *Alexander Frazier*. But it seems to have been thought inadmissible, because *Alexander Frazier* did not prosecute his suit against *Howard* and *Henrietta Rogers* to a trial, but suffered a non-suit to be entered.    The force of this objection we do not distinctly perceive; the evidence offered was not as a judgment on the merits against *Frazier*, but only to show his own views, in relation to the true location of the land he claimed.    The declarations, or admissions of a party to a suit, may always be given in evidence against him; why then may not his more solemn acts, such as a deliberate location of a tract of land, claimed by him, upon plots returned in a suit brought for the recovery of it, showing his own opinion of its true location, with which he may be supposed to be acquainted?    We do not say it would be conclusive evidence against him, or those claiming under him, in any subsequent suit involving the location of the same land; it certainly would not.    But we think it clearly admissible, as a fact evincing his sense at the time, touching the proper location, as much so as any other act, declaration, or admission of his could be.

The question presented by the third exception, arises on the construction of the patent for the tract of land called *Deep Point*.    The expressions in the patent, to which we are called upon to give a construction, are "lying in the county aforesaid, on the head of the north west branch of *Patapsco* river, and joining the south west side of *Baltimore* town, and on a tract of land called *Lunn's Lot*, beginning at a bounded red oak tree, standing near a bounded locust post, which post is the beginning boundary of Baltimore town, and running thence, &c." the different lines, courses and distances without calls.    It is contended, that the expressions used must be understood to mean

"*joining on Lunn's Lot*," and that the patent for *Deep Point* must be so construed, as that by force of the word *joining*, *Deep Point* cannot be located so as to run into *Lunn's Lot*, but that the first line must, to its whole extent, run with, and adjoining to, an out line of *Lunn's Lot;* and it was so adjudged by *Baltimore* County Court.

But we do not perceive any thing in the language of the patent that we think will sustain such a construction. Where boundaries called for in a grant can be established, it is a settled principle of construction, that the courses and distances expressed, are to be disregarded, and the lines run to the boundaries, according to the calls. But what boundaries are called for here? Neither the first, nor any other line of *Deep Point*, has a call to the first or any other line of *Lunn's Lot*, but each is expressed to run a certain course and distance, without any call; and if it be admitted that *Deep Point* must be so located as to adjoin *Lunn's Lot*, what is there to confine that junction to the first, more than any other line? Or with what line of *Lunn's Lot* is the junction to be made? That, indeed, is not professed to be ascertained; but the argument is, that the first line of *Deep Point* must join, and run its entire length with *some out line* of *Lunn's Lot*, which would seem to be entirely arbitrary. The part or line of *Deep Point* to join *Lunn's Lot*, is no more designated than the part or line of *Lunn's Lot* to be joined; and the expression *joining* in the patent, would be as fully gratified by a joining at one point, as at another. And if the tree called for as the beginning tree of *Deep Point*, does not stand on a line of *Lunn's Lot*, it would be impossible to run the first line of *Deep Point* in its whole extent with, and adjoining a line of the latter tract; but a course would have to be shaped to strike it, which would be to add a line to *Deep Point*, and to change the course and distance of the first line, without any express call to authorise it, and to leave the point of termination of that line altogether uncertain, in the place of the course and distance clearly

expressed, contrary to the ordinary office of calls, which are usually preferred for greater certainty.   But we think the patent for *Deep Point* will not admit of such a construction; and that the word *joining*, as there used, is not of such imperative and binding force, as *that*, that tract of land must be so located as to join on *Lunn's Lot*, and cannot run into it.   It seems to us that the expression used, makes no part of the description of the land itself, or of its metes and bounds, but was intended only as a general *designatio loci*, where it was supposed to lie; and that the beginning tree being ascertained, the location of the land from that tree, must be governed by the particular description given by courses and distances, they having no calls or binding expressions to control them.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.