## CONTEE *v.* STATE

[No. 27, September Term, 1962.]

488

*Decided October 17, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, HORNEY and SYBERT, JJ.

*Robert C. Heeney* and *Victor L. Crawford,* with whom were
*Fairbanks, Heeney & McAuliffe* on the brief, for appellant.

*Robert C. Murphy, Assistant Attorney General,* with whom
were *Thomas B. Finan, Attorney General,* and *Leonard T.
Kardy* and *James Miller, State's Attorney* and *Assistant State's*

*Attorney* respectively, *for Montgomery County,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was convicted of rape in a former trial and on appeal the judgment was reversed. *Contee v. State,* 223 Md. 575. Upon remand the case was removed for trial to another county and the accused was again convicted and sentenced to life imprisonment.

No question of the sufficiency of the evidence of rape is raised in this appeal, and it will suffice to say that there was evidence that it was performed, under threat with a knife, in the presence of an off-duty nurse occupying the same apartment as the prosecuting witness, who was then an out-patient at a mental institution.

The first point raised on this appeal is the refusal of the trial court to ask the jurors upon their *voir dire* the following questions: "(3) If you considered all the evidence in this case and then had a reasonable doubt as to the guilt of the accused, would you nevertheless vote for conviction because you felt you would be subject to the scorn of your fellow man because you would be voting for the acquittal of a negro accused of raping a white woman?

"(4) Would the fact that a white woman accuses a negro of a rape of her person so prejudice your mind that you would return a verdict of guilty on less or slighter evidence than if the accusing person was a negro and the defendant was a white man?"

The trial court did, however, unlike the situation in the prior appeal which caused the reversal and in *Brown v. State,* 220 Md. 29, propound a general question on the subject of racial prejudice. That question was: "3. If chosen as a juror, will you in this case render a fair and impartial verdict based on the law and evidence without bias or prejudice, and without regard to the race, creed or nationality of the accused?"

The matter of the examination of jurors on their *voir dire,* to probe for the possible existence of racial prejudice as a ground for disqualification, has been so recently and so com-

pletely discussed that it is unnecessary to deal with it here at length. In *Giles v. State,* 229 Md. 370, 378, the most recent case on the subject, we held that a general question in a rape case, along the lines of that propounded in the instant case, would suffice, even though the court might well have propounded a more specific question in regard to prejudice where the prosecuting witness was white. In *Humphreys v. State,* 227 Md. 115, 120, we left open the question answered in the *Giles* case, pointing out that failure to ask a question, in addition to the general question, as to "less or slighter evidence" in case of a Negro charged with raping a white woman, was not prejudicial because the jurors knew that the case involved such a charge. In the instant case it clearly appears from the docket entries that the accused was arraigned in the presence of the jurors, who knew his race, but it is not as clear as in the *Humphreys* case as to the race of the alleged victim, although the form of the court's question would seem to suggest it. In any event, we think the *Giles* case is controlling, and we find no prejudice in the failure to ask the more specific question, or to propound the other question as to "scorn of your fellow man," which was simply designed to accomplish the same end in more dramatic language. See also *Glaros v. State,* 223 Md. 272, and *Lee v. State,* 164 Md. 550. The cases all agree that the matter rests in the sound discretion of the trial court, and we find no abuse of discretion.

The appellant next contends that the transcript of the testimony of the prosecuting witness, taken at the prior trial and transcribed by the Court Stenographer should not have been read to the jury. At the outset of the second trial the State offered the testimony of Dr. Jacob J. Miller, a qualified psychiatrist and the Clinical Director of Northville State Hospital in Michigan, that Nancy Somers, the prosecuting witness, had been permanently committed to said institution by order of the Probate Court of Wayne County, Michigan, and that she had been adjudicated to be insane by that tribunal. He testified that he had examined her on numerous occasions, the last time being a few days before the trial, and expressed the opinion that she was suffering from mental illness and psychosis, and that she was "incapable at this time".

That she had exhibited suicidal tendencies was only one of the factors on which this opinion was based. He further testified that under the McNaughten rule, with which he was familiar, she was unable to distinguish between right and wrong or to understand the nature and consequences of her acts, and that she "would be legally insane" under that test.

It is well settled that testimony taken at a former trial may be admitted, if it be shown that the witness is dead, insane, or beyond the jurisdiction of the court, or on diligent inquiry cannot be located, or that some other circumstance exists which shows that the witness who gave the testimony at the former trial cannot be procured as a witness at the second trial. This general rule was stated in *Hendrix v. State,* 200 Md. 380, 387, and in somewhat different form in *Bryant v. State,* 207 Md. 565, 587. See also *Marshall v. Haney,* 9 Gill. 251, 257; *Rogers v. Raborg.* 2 G. & J. 54, 60; *Bowie v. O'Neale,* 5 H. & J. 226, 234. For a discussion of the principles involved and the authorities elsewhere, see 5 Wigmore, *Evidence* (3rd ed.) § 1406 et seq.; 2 Jones, *Evidence* (5th ed.) § 313; 2 Wharton, *Criminal Evidence* (12th ed.) § 479; Notes 15 A.L.R. 495; 79 A.L.R. 1392; 122 A.L.R. 425; 159 A.L.R. 1240. The writers and authorities all agree that where there was an opportunity to cross-examine the witness in the former trial, there is no violation of the right to be confronted with the witnesses against the accused, under Art. 21 of the Maryland Declaration of Rights or under the Due Process clause of the Fourteenth Amendment to the Federal Constitution. Since there is no constitutional right involved, there has been a discernible tendency, we think, to liberalize the rule, which was first applied *ex necessitate* in case of death.

The appellant argues, however, that there was no sufficient predicate laid by way of proof of insanity or unavailability. It is true that the preliminary proof of insanity cannot rest upon mere hearsay that the witness is in a mental institution. *Bielski v. Rising,* 163 Md. 492, 495. But there was direct testimony in the case at bar by the Director of the Institution to which she had been committed as to the status of the witness. We think the *McNaughten* test of criminal responsibility, concerning which Dr. Miller was interrogated, had no proper place

in the present inquiry. The true test would seem to be whether the witness has sufficient understanding to apprehend the obligation of an oath and to be capable of giving a correct account of the matters which she had seen or heard in reference to the question at issue. Cf. *Johnston v. Frederick,* 140 Md. 272, 275. However, Dr. Miller's testimony that she had been adjudicated insane and committed to the Institution, according to official records in his possession, plus his testimony that she was "incapable" at the time of trial, supports the ruling of the trial court that a sufficient predicate had been laid on the score of insanity or mental incompetency.

On the question of unavailability, the appellant points out that by Maryland Code (1957), Art. 27 sec. 617 et seq. and Michigan Statutes Annotated, sec. 28-1020 et seq., both states have adopted the essential provisions of the uniform act to secure the attendance of witnesses from without a State in criminal proceedings. Hence, he argues that the witness was not beyond the jurisdiction of this State. It may be doubted whether the uniform act extends so far as to authorize the release of any person lawfully in custody, in order to testify in another State. Of course, the act does not extend the jurisdiction of any State, since it is based on comity. In *State v. Jordan,* 320 P. 2d 446 (Ariz.), cert. denied 357 U. S. 922, rehearing denied 358 U. S. 859, it was held that the Act was simply permissive and did not require the prosecution to attempt to procure the witness from another State, as a prerequisite to the proffer of testimony taken at a prior trial. See also *People v. Hunley,* 21 N. W. 2d 923 (Mich.). But since we hold that the predicate of insanity was sufficiently laid, we find it unnecessary to rule on the second ground. Cf. *Midgett v. State,* 223 Md. 282, 300.

The appellant's contention that the trial court abused its discretion in denying a continuance is without merit. Counsel for appellant was sufficiently aware, we think, several months before the trial of the possibility that Nancy Somers might not be able to attend the second trial. His belated motion, after the testimony of Dr. Miller had been completed, for "an opportunity to satisfy itself [the defense] that she is, in effect, mentally incompetent" came too late. Cf. *Hughes v. Averza,*

223 Md. 12, 18, *Peddersen v. State,* 223 Md. 329, 337 and *Jackson v. State,* 214 Md. 454, 459.

The appellant next contends that the state's attorney committed reversible error by inquiring into the juvenile court record of the appellant, when the appellant took the stand. When asked if he had been convicted of crime, he replied in the affirmative, and when asked what, if any crimes, he stated "theft", in 1957. When asked what other crimes, the witness stated that he had been convicted "as a juvenile". The Court then remarked: "we are not interested in any juvenile records". The state's attorney then asked if the appellant had been convicted of auto larceny in 1954. He replied that he had been convicted as a juvenile. Counsel then moved for a mistrial, which the court refused, charging the jury to disregard the question and answer, and striking it out, as having nothing to do with the case. We find no error. Under the circumstances, we think the prompt action of the trial court was enough to remove any prejudicial effect from the minds of the jury. Cf. *Lusby v. State,* 217 Md. 191, 195.

Finally, the appellant contends that the state's attorney was guilty of prejudicial misconduct when he asked the accused, in addition to convictions in 1958, about a criminal conviction in April, 1959, which the state's attorney did not undertake to prove, after the accused denied it, except by an alleged admission made at the prior trial, which the trial court struck out and told the jury to disregard. The appellant's counsel then moved for a mistrial, which was denied. We find no abuse of discretion. Cf. *Lusby v. State, supra,* and *Cook v. State,* 225 Md. 603, 610. We also think the court's instruction to the jury, given at the request of both sides, that there was no evidence of a conviction in 1959, and that the mere asking of the question did not constitute evidence, was sufficient to remove any prejudicial effect from the minds of the jury.

*Judgment affirmed.*