# DONALD LEROY THOMAS *v.* STATE OF MARYLAND

[No. 1331, September Term, 1975.]

*Decided July 29, 1976.*

The cause was argued before GILBERT, C. J., and MORTON, POWERS and DAVIDSON, JJ.

*Robert C. Heeney* and *W. Shepherdson Abell, Assigned Public Defenders,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *William J. Hickey, Jr., Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This Court, in *Thomas v. State,* 29 Md. App. 45, 349 A. 2d 384 (1975), affirmed the convictions of Donald Leroy Thomas for (1) assault with intent to murder Gloria Jean Stewart and (2) the use of a handgun in the commission of a felony. The instant case arises, like "the maiden phoenix," [1] out of the ashes of the charge of assault with intent to murder because Gloria Jean Stewart died eleven months and six days after her initial wounding by appellant. Appellant was promptly indicted by the Grand Jury for Montgomery County for the murder of Miss Stewart. Appellant moved to dismiss the indictment on the ground that any prosecution was barred by the double jeopardy clause of the Constitution of the United States as made applicable to the several States by the decision of the Supreme Court in *Benton v. Maryland,* 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969).[2] The hearing judge dismissed the appellant's contention. A petit jury, presided over by Judge John J. Mitchell, in the Circuit Court for Montgomery County, found the appellant guilty of murder in the second degree. Judge Mitchell imposed a sentence of ten (10) years upon appellant, but the judge directed that the sentence was to be served concurrently with any sentence appellant was then serving.

Little need be said about the facts from which this appeal had its genesis. The details of the crime are set forth in *Thomas v. State, supra* at 47-48, so we shall confine our

---

1. William Shakespere, King Henry VIII, Act V, scene v, line 40 (1613).

2. *Benton* overruled Palko v. Connecticut, 302 U. S. 319, 58 S. Ct. 149, 82 L. Ed. 288 (1937), which held that the Fifth Amendment was directed to the federal government and not the States.

discourse to the applicable law, referring only to such facts as may be pertinent to the particular explication of the five issues raised by appellant.

## I.

"Reversible error was committed where the trial judge denied the appellant's motion to dismiss the indictment."

One of the basic tenets of American Law is that no man ought to be compelled to answer twice for the same offense. Our forefathers adopted, as part of the "Bill of Rights," a constitutional safeguard against double jeopardy when they provided that no person shall ". . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. While Maryland did not place a similar proviso within its Constitution or Declaration of Rights, it has, nevertheless, continuously applied the common law prohibition against double jeopardy [3] even before *Benton v. Maryland, supra,* extended the federal rule against double jeopardy to the States.

The stating of the ban against double jeopardy is simple. Its application to given facts becomes more complex. *See, e.g., Cousins v. State, supra* note 3; *Thomas v. State, supra* note 3. *See also Ashe v. Swenson,* 397 U. S. 436, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970), and *Bartkus v. Illinois,* 359 U. S. 121, 79 S. Ct. 676, 3 L.Ed.2d 684 (1959), in which the Court upheld separate prosecutions by the federal government and the State of Illinois even though both prosecutions arose from the same facts.[4]

---

**3.** Cousins v. State, 277 Md. 383, 354 A. 2d 825 (1976); Thomas v. State, 277 Md. 257, 353 A. 2d 240 (1976), *rev'g* 26 Md. App. 232, 337 A. 2d 137 (1975).

**4.** Mr. Justice Black filed a sharply critical dissent in *Bartkus* exclaiming:

"The Court apparently takes the position that a second trial for the same act is somehow less offensive if one of the trials is conducted by the Federal Government and the other by a State. Looked at from the standpoint of the individual who is being prosecuted, this notion is too subtle for me to grasp." 359 U. S. at 155.

Judge Eldridge, in *Cousins*, an in depth discussion of double jeopardy, noted that some States apply the same event or same transaction test for determining the existence, *vel non*, of former jeopardy while others utilize the required evidence test which is the common law standard.

Appellant would have us jettison the required evidence test in favor of the same transaction test, but, as Judge Eldridge pointed out in *Cousins*, Maryland is not free ". . . to interpret the Fifth Amendment guarantee against double jeopardy as embodying the same transaction test in multiple trial situations." 277 Md. at 394. *Oregon v. Hass*, 420 U. S. 714, 95 S. Ct. 1215, 43 L.Ed.2d 570 (1975), makes it vividly clear that a State is not at liberty to interpret Federal Constitutional provisions more broadly than has the Supreme Court. 420 U. S. at 719. *See also Thomas v. State*, 26 Md. App. 232, 238, 337 A. 2d 137, 140 (1975), *rev'd on other grounds*, 277 Md. 257, 353 A. 2d 240 (1976). Judge Eldridge, in *Cousins*, went on to state for the Court that:

> "Maryland has never recognized a common law right to have joined at one trial all offenses arising from the same transaction. While recognizing that common law principles prohibit multiple prosecutions and multiple punishments for the same offense, *Gilpin v. State*, . . . [142 Md. 464,] 466, 121 A. 354, [355 (1923),] this Court has rejected the contention that offenses are the same for double jeopardy purposes because they arise from the same criminal act or transaction." 277 Md. at 395.

In this State, the proper test for determining whether a prior acquittal or conviction is a bar to subsequent prosecution is the required evidence rule. That rule of law, simply stated, is:

> "The offenses are not the same, though growing out of the same transaction, when one differs in *all* its elements from the other, or when the evidence adequate to one does not relate to, or support, the

other." *Gilpin v. State,* 142 Md. at 467 (emphasis added).

The required evidence test is applied by a majority of the States, *Cousins v. State, supra* at 392, and is employed by the Supreme Court of the United States. *Morgan v. Devine,* 237 U. S. 632, 641, 35 S. Ct. 712, 715, 59 L. Ed. 1153, 1156 (1915); *Gavieres v. United States,* 220 U. S. 338, 341-342, 31 S. Ct. 421, 422, 55 L. Ed. 489, 490 (1911).

Patently, a necessary element of the required evidence to sustain a murder charge is that the victim died. An assault with intent to murder possesses all the elements of murder except the death of the victim. Obviously, then, the two offenses are not the same even though they may have grown out of the same transaction.

We have been directed to no Maryland case, nor have we found one precisely on point with the matter now before us. Cases of other courts that have come to grips with similar situations and upheld convictions in the face of a plea of double jeopardy are legion.

In *Diaz v. United States,* 223 U. S. 442, 32 S. Ct. 250, 56 L. Ed. 500 (1912), the Supreme Court considered a case arising from the Philippine Islands, wherein Diaz had been convicted of assault and battery and fined fifty pesetas. The victim expired 26 days after the assault, apparently as a result of the injuries sustained in the assault, and Diaz was brought to trial on a charge of murder. He interposed a plea of former jeopardy. The plea was rejected by the Philippine Courts (15 Philippine, 123), and the case was appealed to the Supreme Court of the United States. That body likewise rejected the double jeopardy argument saying:

> "The homicide charged against the accused in the court in the first instance and the assault and battery for which he was tried before the justice of the peace, although identical in some of their elements, were distinct offenses both in law and in fact. The death of the injured person was the principal element of the homicide, but was no part of the assault and battery. At the time of the trial

for the latter the death had not ensued, and not until it did ensue was the homicide committed. Then, and not before, was it possible to put the accused in jeopardy for that offense." 223 U. S. at 448-49.

More pointedly, the Supreme Court of Pennsylvania, in *Commonwealth v. Ramunno*, 219 Pa. 204, 68 A. 184 (1907), disallowed the very claim appellant makes. In that case, Ramunno had been convicted of assault with intent to murder and was sentenced to imprisonment for a term of seven years. Four days following the imposition of sentence upon Ramunno, the victim died from the effects of the assault upon his person. Ramunno was then charged with the murder of the assault victim and was convicted of first degree murder. The Pennsylvania court held that the offenses were separate and apart. Ramunno could not have been tried for murder until the death of the victim, but the law was not required to postpone indefinitely the trial of Ramunno on the assault charge on the mere contingency that the victim might die as a result of the assault. When Ramunno was initially tried, the victim was still alive, and assault with intent to murder was the only crime he had committed as of that time. In order for the plea of *autrefois convict* to be successful, the subsequent prosecution must be "... for the same identical act ...."[5] 4 W. Blackstone, *Commentaries on the Laws of England* § 336 (W. Lewis 1897). *See also Southworth v. State*, 98 Fla. 1184, 125 So. 345 (1929) (assault and robbery, murder); *Centers v. Commonwealth*, 318 S.W.2d 57 (Ky. 1958) (armed robbery, murder); *State v. Littlefield*, 70 Me. 452 (1880) (assault and battery, murder); *Carmody v. Seventh Judicial District Court*, 81 Nev. 83, 398 P. 2d 706 (1965) (robbery, murder); *Curtis v. State*, 22 Tex. Ct. App. R. 227, 3 S. W. 86 (1886) (aggravated assault and battery, murder); *Stewart's Case*, 5

---

5. We do not, in this opinion, endeavor to resolve the question of the appellant's serving two sentences, albeit concurrent, for offenses which may have merged had they been tried jointly as part of the same indictment. That interesting issue is not before us and, the resolving of the thorny problems posed thereby will have to await another day when the matter is put squarely to us.

Irv. 310; [6] 1 *Bishop on Criminal Law* § 1059 (9th ed. J. Zane & C. Zollmann 1923).

## II.

"The trial judge abused his discretion in admitting the prior recorded testimony of Gloria Jean Stewart at the [murder] trial."

In the other of his two principal thrusts, appellant zeroes in on the admission into evidence of the sworn testimony of the victim as recorded at the assault with intent to murder trial. Appellant vigorously avers that Miss Stewart's prior testimony should not have been received into evidence because he was denied the right to confront the witness against him.

The testimony of Miss Stewart that appellant sought to exclude was that she saw the appellant shoot her after he had exclaimed, ". . . I got your ass now." Earlier, the appellant had told the victim that " . . . if he couldn't have me, there wasn't nobody else going to have me, and he would rather see me dead." Of course, that testimony, accompanied by the victim's subsequent death, manifested a sound basis for the murder indictment.

The general rule with respect to the use of prior sworn testimony was set forth by the Court of Appeals in *Contee v. State*, 229 Md. 486, 184 A. 2d 823 (1962), *cert. denied*, 374 U. S. 841 (1963). Speaking through Judge Henderson (later Chief Judge), the Court answered a challenge to the admission of testimony given at a prior trial by a witness who later became incompetent. The Court said:

"It is well settled that testimony taken at a former trial may be admitted, if it be shown that

---

6. Stewart's Case, a Scottish case decided between 1852-1867, held:

"There can never be the crime of murder till the party assaulted dies; the crime has no existence in fact or law till the death of the party assaulted. Therefore it cannot be said that one is tried for the same crime when he is tried for assault during the life, and tried for murder after the death, of the injured party. That new element of the injured person's death is not merely a supervening aggravation, but it creates a new crime." 5 Irv. at 314.

the witness is dead, insane, or beyond the jurisdiction of the court, or on diligent inquiry cannot be located, or that some other circumstance exists which shows that the witness who gave the testimony at the former trial cannot be procured as a witness at the second trial. This general rule was stated in *Hendrix v. State,* 200 Md. 380, 387, [90 A. 2d 186, 189 (1952),] and in somewhat different form in *Bryant v. State,* 207 Md. 565, 587 [, 115 A. 2d 502, 512 (1955)]. See also *Marshall v. Haney,* 9 Gill. 251, 257; *Rogers v. Raborg,* 2 G. & J. 54, 60; *Bowie v. O'Neale,* 5 H. & J. 226, 234. For a discussion of the principles involved and the authorities elsewhere, see 5 Wigmore, *Evidence* (3rd ed.) § 1406 et seq.; 2 Jones, *Evidence* (5th ed.) § 313; 2 Wharton, *Criminal Evidence* (12th ed.) § 479; Notes 15 A.L.R. 495; 79 A.L.R. 1392; 122 A.L.R. 425; 159 A.L.R. 1240. The writers and authorities all agree that where there was an opportunity to cross-examine the witness in the former trial, there is no violation of the right to be confronted with the witnesses against the accused, under Art. 21 of the Maryland Declaration of Rights or under the Due Process clause of the Fourteenth Amendment to the Federal Constitution. Since there is no constitutional right involved, there has been a discernible tendency, we think, to liberalize the rule, which was first applied *ex necessitate* in case of death." 229 Md. at 491.

Appellant asseverates, apparently as an alternative to his first issue, that the crimes, murder and assault with intent to murder, are not so substantially identical as to permit the use, in this case, of Miss Stewart's prior testimony. We, however, have a different view.

*McCormick's Handbook of the Law of Evidence* § 257 (2d ed. E. Cleary 1972), states:

". . . [I]nsistence upon precise identity of issues, which might have some appropriateness if the

question were one of res judicata or estoppel by judgment, are out of place with respect to former testimony where the question is not of binding anyone, but merely of the salvaging, for what it may be worth, of the testimony of a witness not now available in person. Accordingly, modern opinions qualify the requirement by demanding only 'substantial' identity of issues.

It follows that neither the form of the proceeding, the theory of the case, nor the nature of the relief sought needs be the same. . . . Thus, in criminal cases where the first indictment charges one offense, e.g., robbery, and the second, another distinct offense, such as murder of the person robbed, it is usually considered sufficient that the two indictments arise from the same transaction." (Footnotes omitted).

*See also State v. Swiden,* 62 S. D. 208, 212-14, 252 N. W. 628, 630-31 (1934).

In 5 J. Wigmore, *Evidence in Trials at Common Law* § 1387 (J. Chadbourn rev. 1974), opines:

"The *issue* on the occasion when the former testimony or deposition was given must have been substantially the same, for otherwise it cannot be supposed that the former statement was sufficiently tested for cross-examination upon the point now in issue. Conversely, it is sufficient if the issue was the same, or substantially so for the purpose." [7]

A case very much akin to that now before us was decided by the Texas Court of Appeals in 1883. In that case, *Hart v. State,* 15 Tex. Ct. App. R. 202 (1883), a Doctor Skinner was shot while he was on his way home from a house call. Hart was arrested and charged with assault with intent to

---

7. 5 Wigmore § 1387, at 91-95, cites decisions from Federal, State and foreign jurisdictions interpreting the rule. Such interpretations demonstrate the disharmony in the rule's application.

murder. An "examining trial" was held before a justice of the peace at which Skinner testified to the assault and that Hart had shot him. Skinner died within a month of the shooting, and Hart was indicted for murder. At Hart's trial, the prosecution, over objection, introduced into evidence the testimony of Doctor Skinner. On appeal, the Court said that there was no error, holding:

> "It is a rule growing out of necessity, but now well established, 'that, if there has been a prior proceeding involving the same issue, between the same parties, conducted regularly in pursuance of law, and therein the defendant had the opportunity to cross-examine the witnesses against him, then, if a witness has died, what he testified at the former hearing may be shown in evidence against the defendant in the present one. In the circumstances thus explained, the testimony of the witness at a former trial of the same cause, or another cause presenting the same issue, between the same parties, may be shown in evidence.' (1 Bish. Crim. Proc., secs. 1195, 1196, and notes[)]." 15 Tex. Ct. App. R. at 225.

*See also Dunlap v. State,* 9 Tex. Ct. App. R. 179, 190 (1880), quoting T. Cooley, *Constitutional Limitations* 318 to the effect:

> "If the witness was sworn before the examining magistrate, or before a coroner, and the accused had an opportunity then to cross-examine him or if there was a former trial, on which he was sworn, it seems allowable to make use of his deposition or of the minutes of his examination, if the witness has since deceased . . . ."

*See* 1 S. Greenleaf, *Evidence* § 163 (1899); 3 *Wharton's Criminal Evidence* § 650 (13th ed. C. Torcia 1973).

The clear message from the cases and the treatises is that if there is an opportunity for cross-examination at the former trial, the testimony of the witness, deceased at the

time of the later trial, is admissible. The trustworthiness of testimony of that type is obvious.

We think the issue presented in appellant's attempted murder trial for shooting Miss Stewart in a vital organ is substantially similar to the issue formulated in the subsequent murder trial minus the victim's death, the essential element of murder. A review of the testimony by Miss Stewart at appellant's trial for assault with intent to murder discloses that appellant's then counsel endeavored, through an elaborate cross-examination, to discredit the witness and demonstrate the appellant's lack of culpability and, thus, satiated the opportunity for cross-examination test. We fail to see how the trial judge abused his discretion by permitting the admission into evidence of Miss Stewart's prior testimony, particularly in light of the extensive cross-examination to which she was subjected.

## III.

"The trial judge abused his discretion in refusing to permit the appellant to offer the criminal record of the decedent for purposes of impeaching the prior testimony offered at trial."

This exact issue was presented to this Court in appellant's appeal from the conviction for assault with intent to murder. *Thomas v. State,* 29 Md. App. 45, 349 A. 2d 384 (1975). There, we rejected appellant's argument relative to the use of the decedent's ". . . previous convictions for assault . . ." on the ground that the convictions did not indicate or even approach the type of crime which would indicate that the victim lacked candor or truthfulness. 29 Md. App. at 52-54. We are not inclined to depart from that holding, and we view it as dispositive of the issue.

## IV.

"Reversible error was committed by the trial judge in submitting the case to the jury on the question of first degree murder, due to the insufficiency of the evidence."

Appellant hypothesizes that if the victim's prior testimony was excluded, the evidence remaining would have been insufficient to support submitting to the jury the question of whether appellant was guilty of first degree murder. We need not tarry long in our consideration of this issue for the reason that we have held, in part II hereof, that the deceased's previous sworn testimony, at the assault with intent to murder trial, indeed, was admissible in the instant case. Hence, the foundation upon which the appellant built his theory has crumbled.

## V.

"Reversible error was committed by the trial judge in submitting the case to the jury due to the insufficiency of the evidence."

In a criminal trial, the test for determining the sufficiency of the evidence in a jury trial has been articulated so often by the Court of Appeals and by this Court that citations are no longer necessary. The test is whether the admissible evidence adduced at the trial showed directly or supported a rational inference of the facts to be proved, from which the jury could be properly convinced, beyond a reasonable doubt, of the accused's guilt of the offense charged.

Because there was, in the case now before us, a conflict in the expert medical witnesses' testimony as to the cause of death, the appellant asserts, in effect, that the doubt should have been resolved in his favor. The short answer to the contention is that the jury, properly instructed as to the burden of proof shouldered by the State, the presumption of innocence cloaking the appellant, and the applicable law relative to homicide, concluded, beyond a reasonable doubt, that the appellant was guilty of murder in the second degree.

The record reveals that Dr. Russell Fisher, the State's Chief Medical Examiner, testified:

"I believe that she [Gloria Jean Stewart] died as a result of a series of complications of a gunshot wound which injured her spinal cord and, in fact,

destroyed her spinal cord at the level of the first lumbar vertebrae."

It was Doctor Fisher's opinion that Miss Stewart suffered from no ". . . disease in a terminal state other than those things which . . . [he] regarded as complications of the gunshot wound . . ." of June 2, 1974. Dr. Bernard Kreutz, the general surgeon who originally operated upon Miss Stewart following the shooting, said: "I think she didn't die immediately because of the gunshot wound, but eventually died because of that."

There was medical testimony as to the internal complications sustained by Miss Stewart, including, *inter alia,* a renal disease. The State's evidence would indicate that the renal disease was due to the gunshot wound. On the other hand, Dr. Oscar B. Hunter, a forensic pathologist, testifying on behalf of the appellant, told the jury that in his opinion Miss Stewart ". . . died from renal disease." Doctor Hunter thought the renal, or kidney, disease ". . . existed many years prior to . . ." the shooting.

One of the jury's purposes is to resolve different issues of fact. When, as here, there is conflicting evidence, it is for the jury to pick and sift, to stress and ignore, to believe and disbelieve, to weigh and assess, and resolve the conflicts in reaching a final decision to acquit or convict. The jury, in the case at bar, elected to believe the State's witnesses and not the appellant's. We observe no error in Judge Mitchell's submitting the matter to the jury, nor can we agree with appellant that the evidence in this case was insufficient to sustain the jury's verdict of murder in the second degree.

*Judgment affirmed.*