SAMUEL G. MATTHEWS AND H. F. ZOLLIKOFFER, Garnishees of SAMEUL D. REESE, JACOB REESE AND ALFRED ROSS.

ATTACHMENT ON WARRANT being a proceeding under an Act of Assembly, before a tribunal of special and limited jurisdiction, it must appear affirmatively on the face of the papers that the requirements of the statute have been substantially complied with, otherwise the Court granting the writ would be acting without jurisdiction, and the proceeding would be void.

JURAT FOR WARRANT OF ATTACHMENT VERIFIED BY OATH AND AFFIRMATION.—Where it appeared affirmatively from the *jurat* upon which a warrant for an attachment was based, that the party actually made oath according to law to the truth of the matters therein stated, and afterwards also affirmed to the truth of said statements; HELD: That the subsequent affirmation may be regarded as surplusage.

NOTICE BY COMMISSIONER FOR TESTIMONY.—In a notice by a commissioner to the counsel of the garnishees of the time and place of taking testimony, the case was wrongly entitled, but the counsel receiving the notice knew inferentially the name of the case, was informed of the names of the witnesses to be examined, and signified his intention to be present at the examination; HELD: That the notice was sufficient.

PRACTICE IN COURT OF APPEALS.—Where an Act of Assembly requires due notice to be given, agreeably to the rule of the Court in which the case is pending, in the absence of proof as to the rule of Court, it must be assumed by the Court of Appeals, where the Court below has admitted the evidence, that the notice given was in conformity with its rule.

DEPOSITION: PRACTICE.—Where a witness is out of the reach of the Court's process so that the plaintiff could not enforce his attendance by summons, under the Act of 1828, ch. 165, the plaintiff is entitled to read the depositions of the witness at the trial of the cause.

PRACTICE: SUPPLEMENTARY INTERROGATORIES or questions, not sent with the commission, would not be regular, unless the party against whom the answers are to be used had notice, or unless propounded with his assent, or allowed by the terms of the commission.

IMPEACHMENT OF WITNESSES.—By the well settled principles of law, witnesses cannot be impeached by proving that they had on other occasions made statements at variance with their testimony; a proper foundation must be previously laid by interrogating the witnesses on the subject of the alleged variance, and allowing them an opportunity for explanation

The same rule governs when the testimony of the witness is taken under a commission, as where he is examined on the stand at the trial.

ESTOPPEL: CERTIFICATE OF A JUSTICE—EFFECT OF.—Where the certificate of a Justice of the Peace is offered in evidence against him in any cause where he is a party, the certificate being his official act, done under the solemn sanction of his oath, in the performance of a duty imposed upon

him by law, though under some circumstances it may be impeached by others, he is precluded from denying the truth of what he has officially certified.

NOTICE: LIABILITY OF PARTNER DISCHARGED BY.—It is well settled that one partner may exempt himself from future liability by giving express previous notice to a third person, that he will be no longer bound for notes or drafts drawn by his co-partners in the name of the firm.

Where the testimony was that the defendant had given notice that he would not be responsible for the debts of S. D. R. & Co., if believed by the jury, it was sufficient to exempt the defendant from liability for debts subsequently contracted, unless the plaintiffs could prove some act of adoption by the defendant afterwards, or that he derived some benefit from advances subsequently made to the firm.

SECURITY OF EQUAL DEGREE NOT AN EXTINGUISHMENT OF ORIGINAL DEBT. The acceptance of a security or undertaking of equal degree, is of itself no extinguishment of the former debt, but a creditor will not be suffered to recover on the original cause of action, unless he can show the security to have been lost, or actually produces it in Court to be cancelled, or there cancels it.

ADMISSIONS: EFFECT OF.—An admission by defendants that a judgment is evidence from which the jury might find a verdict for the whole amount of the claim sued on, but not conceding that it was conclusive evidence, does not render it incompetent for them to claim any credit upon that judgment to which they might show themselves entitled by proof.

CONSTRUCTION: RULES OF.—The answers of garnishees in *attachment*, are to be construed by the jury against them in all matters referred to in said answers which are therein left uncertain.

APPEAL from the Superior Court of Baltimore City:

*Attachment on warrant* by the appellees against the appellants. The attachment was sued out against Samuel D. Rees, Jacob Rees and Alford Ross as partners, and as nonresident debtors, upon an alleged claim for $5552.29. This attachment was laid in the hands of Matthews and Zollikoffer as garnishees; they appeared as did also the defendants. The latter severed in defence, and the defendant Ross persisted in his defence, while the Messrs. Rees confessed judgment. The suit proceeded against the defendant Ross, who pleaded *non assumpsit*, and the garnishees on behalf of the defendants also pleaded *non assumpsit*, and on their own behalf *nulla bona*.

A mass of testimony was taken, partly under commis-

sions, and partly upon oral examination in Court, the general tenor and effect of which, so far as is material to a proper apprehension of the points made thereon in the Court below, and here considered and decided on appeal, will sufficiently appear from the elaborate opinion of this Court.

· After all the evidence had been given to the jury, prayers were offered both by the plaintiffs and defendants, all of which are embraced in the 14th and last exception.

*14th Exception.* The defendants submitted to the Court the following prayers:

1. "That the Court instruct the jury, that to entitle the plaintiff to recover, the jury must be satisfied from the proof in the cause that the defendant, A. Ross, was a partner of the firm of S. D. Rees & Co. at the time the credit sued on was given.

2. "The mere fact of A. Ross having been associated at one time with S. D. Rees and Jacob Rees, in the firm of A. Ross & Co., is not sufficient evidence to charge A. Ross as a partner of S. D. Rees & Co.

3. "If the jury believe from the evidence, that S. D. Rees & Co., delivered to the plaintiffs twenty-five bbls. of flour, on or about the 22d July 1856, on account of the demand sued on in this case, and that Jacob Rees, as surviving partner, after the death of S. D. Rees, delivered to the plaintiffs forty other bbls. of flour on account of the same, the said firm of S. D. Rees & Co. and the defendant in this action, are entitled to a credit for the flour so delivered.

4. "The Court instruct the jury, that the declarations of S. D. Rees and Jacob Rees are not evidence to prove a partnership against the defendant A. Ross.

5. "That it is not competent for the jury to regard rumors as evidence of partnership against the defendant in this cause.

6. "If the jury shall believe that A. Ross said he was a partner of the firm of S. D. Rees & Co., but at the time the credit sued on in this case was given, was in

fact not a partner, then the plaintiff is not entitled to recover.

7. "The Court instruct the jury, that in order to make A. Ross responsible for the debts of S. D. Rees & Co. as a partner, he must have been an actual or dormant partner, entitled to a share of the profits of the concern, or have held himself out as a partner in such a manner as to induce the plaintiffs to credit the firm, regarding him as such; and if the jury shall believe from the evidence that A. Ross did not receive any part of the profits of the concern and actually gave notice to the plaintiffs on the 1st day of June 1856, that he was not a partner, and not responsible as such, he is not responsible for any credit given the firm afterwards.

8. "If the jury shall believe that A. Ross was a partner of S. D. Rees & Co., and that the note of S. D. Rees, Jacob Rees and Alfred Ross for $3500, dated the 8th of July 1856, which has been given in evidence in this case, was given on account of the debt sued for in this case, that said note had been endorsed by the plaintiffs, and is now outstanding in the hands of Buckley and Shipley, who have sued on the same, the defendant is entitled to be credited with the amount of said note.

9. "If the jury shall believe that the demand sued on in this case arose upon drafts and acceptances, the plaintiffs are not entitled to recover, without producing the same on the trial; and that the judgment against S. D. Rees and Jacob Rees does not include the defendant A. Ross.

10. "If the jury shall believe that A. Ross gave notice to the plaintiffs in this case, or one of them, on the 1st day of June 1856, that he would not be responsible for any advances made to the firm of S. D. Rees & Co., and that the demand sued for in this case is for advances made to said firm, after the date, and contrary to said notice, they must find for the defendant."

The plaintiffs also offered six prayers, of which the 1st, 3rd and 6th were not objected to by the defendants. The 2nd, 4th and 5th were as follows:

2nd. "The plaintiffs pray the Court to instruct the jury, that the defendant, Alfred Ross, is not entitled to a credit in this action for or on account of the note of $3500 signed by S. D. Rees, Jacob Rees and Alfred Ross, even though the jury should find the said note of $3500, was passed away by the said Dare and McClure to other parties, provided the plaintiffs are in possession of the said note and in readiness to deliver it up at the trial table, and provided the jury shall find that said note was not paid.

4th. "The plaintiffs pray the Court to instruct the jury, that the answers of Matthews and Zollikoffer, the garnishees in this action, are to be construed by the jury against the garnishees, in all matters referred to in said answers which are left uncertain by the said garnishees, and that the assignment to Daniel Wright, spoken of in said answers, must be taken by the jury to have been made by the said Alfred Ross, after the laying of the attachment by the plaintiffs in this action, in the hands of Matthews and Zollikoffer.

5th. "The plaintiffs pray the Court to instruct the jury, that the plaintiffs are entitled to recover from Matthews and Zollikoffer, the garnishees, such sums as the jury shall believe, that the said garnishees were indebted for to Alfred Ross, one of the defendants in this action, at the time the attachment in this cause, was laid in the hands of the said garnishees, provided the jury find said A. Ross to have been a partner of Rees & Co. at the time the debt accrued.

The Court below (LEE, J.) granted the first six, and rejected Nos. 7, 8, 9 and 10 of the defendants' prayers, and granted Nos. 2, 4 and 5 of the plaintiffs' prayers; to which rulings of the Court the defendants excepted, and appealed to this Court

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Wm. Schley* and *Jervis Spencer,* for the appellants:

1st. The whole proceeding was *coram non judice,* and

void. The motion to quash, for want of jurisdiction, ought to have been sustained. It might be made even here; and, upon mere suggestion, this Court, *sua sponte,* would quash the attachment.

The proceeding by attachment on warrant is a special jurisdiction, and must be strictly pursued. All the requisites to confer jurisdiction must appear, affirmatively, and *ex-facie,* in the proceedings themselves. An *affidavit* as to the debt, is an essential prerequisite to the granting of *a warrant* by the justice of the peace; and not only the *warrant,* but the *affidavit* also, must be filed with the clerk, *before* he has any authority to issue an attachment. The *jurat,* in this case, does not shew with requisite certainty, that the creditor, Mr. Dare, made oath on the Holy Evangely of Almighty God; it is left uncertain, whether he made "oath according to law, on the Holy Evangely of Almighty God," or whether, "being conscientiously scrupulous of taking an oath, he did solemnly, sincerely and truly declare and affirm." It is not to be intended, that he made his *affirmation,* and also took an *oath.* They are very different acts, not merely in *ceremony,* but in substance. A person is not permitted to *affirm,* in lieu of taking *an oath, unless* he is conscientiously scrupulous of taking an oath. He is allowed to affirm, only, because of his conscientious scruples.

Our proposition is, that it must appear *with certainty,* that a proper affidavit was made; and as the question concerns *jurisdiction,* the certainty required is not merely certainty to *a common intent in general,* to be found out by argument, or by rules of construction. It should be plainly apparent, on the face of the *jurat,* so as to exclude all ambiguity, and any intendment to the contrary. *Wever vs. Baltzell & Davidson,* 6 G. & J., 335. *Stone vs. Magruder,* 10 G. & J., 383. *Bruce vs. Cook,* 6 G. & J., 345. *Dawson vs. Brown,* 12 G. & J., 53. *Brent vs. Taylor,* 6 Md. Rep., 70. *Campbell vs. Webb,* 11 Md. Rep., 472. 1 *Phillips' Law of Evidence,* 9. 2 *Institutes,* 479, 719. 3 *Institutes* 165. *Watson vs. Walker,* 1 M. & Scott,

Matthews & Zollikoffer, garnishees, *vs.* Dare & McClure.

437. *Oliver vs. Price,* 3 *Dowl., P. C.,* 261. Act of 1815. 1 *Sellon's Pr.,* 109. *Gaddis vs. Duraphy,* 1 *Green,* (*N. J.,*) 325. *Ward vs. Robinson,* 1 *Chan.,* 29. *Jacobee vs. Bogue,* 1 *Sergt. & Rawle.,* 450. *Thompson vs. Towson,* 1 *H. & McH.,* 504. 7 *Hump., (Tenn.,)* 47. *Roscoe's Cr. Ev.,* 812, 814. 3 *Greenleaf's Ev., sec.* 192. 3 *Denio,* 54. 1 *Hemp.,* 426. 18 *Barb.,* 407. 1 *Manning, (Mich.,)* 115. 4 *Litt.,* 272. 11 *East.,* 315

2nd. Snodgrass' testimony was not properly admitted. It had been previously agreed that his testimony should be taken in Jefferson county, Virginia, *where he lived,* in the *presence of the defendant or his attorney.*

The testimony was not taken according to the Act of 1828. There was, in fact, no notice. The plaintiffs were not named in the notice, which has been filed, and Ross, the real defendant, was not named. There were, also, other suits on the docket, between the same plaintiffs and parties named in the notice. *Ellicott vs. Patterson's Ex., Ex.,* 4 *Md. Rep.,* 484.

3rd. Tabb's testimony was not properly admitted under the Act of 1828; he was a citizen of Maryland. There was no proof of the inability of the plaintiffs to procure the attendance of the witness at the trial, &c. On the contrary it was proved that they might have produced him.

4th. The Court should not have compelled the defendant to read the testimony from Winchester, which was illegally taken and returned. The questions and answers objected to, were not taken under the authority of the Court, and were alien to the case. The Court had already decided them to be illegal. To compel the defendant to take the *illegal* 'testimony of the plaintiff in this case, because he used the *legal* testimony against him, would compel him in every case to do the same thing. There can be no distinction between oral and written proof; it would incorporate a novel principle in the law of evidence. *Powles vs. Dilley,* 9 *Gill,* 236. *Calvert vs. Coxe,* 1 *Gill,* 95. *Md. Ins. Co. vs. Bossiere,* 9 *G. & J.,* 121. *Boreing vs. Singery,* 2 *H. & J.,* 459.

5th. The testimony of Mrs. Reese was improperly reject-ed; a deed executed by S. D. Rees and the witness, had been given in evidence by the plaintiffs. This deed was acknowledged before Ross, as one of the justices, and re-cited, that "*S. D. Rees, Jacob Rees and Alfred Ross, are partners.*"

Her testimony was offered to prove that A. Ross, knew nothing of the recital in the deed; and the Court decided that Mrs. Reese was *estopped from giving testimony.* It will be contended, that this constituted no estoppel either to Mrs. Rees or to Ross. 1 *Greenlf. Ev.*, secs. 200, 204, 211. 1 *Saund. Pl. & Ev.*, 42. 1 *Phil. Ev.*, 360, 364. *Alexander vs. Walter's Lessee*, 8 *Gill*, 239. North's testimony was improperly rejected on the same ground.

The Court also erred in rejecting other portions of North's testimony. *Gerrish vs. Pike*, 36 *N. H. Rep.*, 510. *Fletcher vs. Henly*, 13 *La. An. Rep.*, 191. *Rankin vs. Crow*, 19 *Ill. S. R.*, 630. 2 *Saund. Pl. & Ev.*, 1284 and 1285. 2 *Phil. Ev.*, 732 note, and 445. *Blewett vs. Tregonning*, 3 *Adol. & El.*, 554.

6th. It is submitted, that it was wrong to exclude the testimony of Holmes, proving that Ross gave actual notice that he was not a partner. 2 *Starkie's Ev.*, 810, and cases under 8th point.

7th. It was not right to exclude the testimony of D. M. Ross, affecting the credibility of Tabb, for the purpose of proving a partnership. Tabb had been used by the plaintiffs as a witness to prove a partnership. No opportunity had occurred to cross-question him, and D. M. Ross was offered to prove that he said *"he knew A. Ross was not a partner of S. D. Rees & Co.* Authorities cited on 5th point and particularly 13 *La. An. Rep.*, 191.

8th. The defendant's 7th prayer ought to have been granted. If the defendant Ross was not, in fact, a partner, active or dormant, and was not an ostensible partner, and never received any part of the profits of the concern, and actually gave notice to the plaintiffs, on 1st June

1856, that he was *not* a partner, and not responsible as such, he ought not to be charged for any liability, *subsequently* created by the said firm. 2 *Starkie's Ev.*, 810. *Furrer vs. Carter*, 11 *Hump.*, 271.    *Willis vs. Dyson*, 2 *Eng. C. L. Rep.*, 339.    1 *Starkie's Ev.*, 164.    *Alderson vs. Pope*, 1 *Camp.*, 404.    *Vice vs. Fleming*, 1 *Younge & Jervis*, 227. *Galway vs. Mathew*, 1 *Camp.*, 402.    10 *East*, 264.

2d. The defendants' 8th prayer ought to have been granted.   In the absence of proof of the loss of the note, if the jury should find that the note for $3500 was given, as a mode of payment of so much of the accounts sued for, and that said note was negotiable, and had been negotiated, and was outstanding in the hands of an endorsee for value, (and there was evidence to justify the hypothesis,) the plaintiffs were not entitled to recover that amount in this suit, without producing the note, and at the trial, to be cancelled.    *Glenn vs. Smith*, 2 *G. & J.*, 493, 508, 509. *Sheppard vs. State*, 3 *Gill*, 298.    *Smith's Mer. Law*, (17 *Law Lib.*,) 113.    5 *Term Rep.*, 515.    2 *Greenleaf's Ev.*, *secs.* 520, 526.    3 *Cranch.*, 314.    1 *Johns. R.*, 35.

3rd. The 9th prayer announces, in principle, the same doctrine which was embodied in the 8th prayer, and ought to have been granted substantially for the same reasons that apply to it.

4th. The 10th prayer ought to have been granted.    The authorities under the 2nd prayer will be relied on in support of this point.    See 2 *Starkie's Ev.*, 810.

5th. The plaintiffs' 2nd prayer propounds, as law, a *readiness* to produce, instead of *actual* production of the note for $3500.    It is substituting ability to do an act for the act itself, even without the expression of a willingness to perform or performance.    It ought to have been produced, *actually* produced; so that it might be *impounded* in Court for cancellation, or be cancelled on the spot.    The case of *Glenn vs. Smith*, 2 *G. & J.*, 493, lays down the true rule. See also authorities cited in support of defendants' 8th prayer.

Matthews & Zollikoffer, garnishees, *vs.* Dare & McClure.

6th. The plaintiffs' 4th prayer ought to have been rejected, *pro multis causis.* *Firstly*, it is vague, and was well calculated to mislead the jury. *Secondly*, the answers being in writing, ought to have been submitted *to the Court* for construction and exposition. It was for the Court, not in the jury, to say whether there was or was not ambiguity the answer. The rule, *contra profrentem*, etc., has no application in a case like this. The answers were before the jury, *as evidence;* to receive such consideration as the jury should consider them entitled to receive, nothing more and nothing less. *Thirdly*, the peremptory instruction, as to the assignment to Daniel Wright, was not the fair and natural interpretation of the answer. If unsatisfactory, the plaintiffs, by exception, might have obtained a precise and definite answer. The instruction, in this respect could only be sustained on the theory of *fraud;* and this is not left to the jury, but was decided by the Court in granting the prayer.

7th. The 5th prayer of the plaintiffs ought not to have been granted. It is open to the palpable exception, that it assumes, without leaving it to the jury to find, that the plaintiffs had established a valid claim. It assumes that a debt had accrued, and was existing, to an amount *at least* equal to *any* amount in the hands of the garnishees. And it assumes, of course, that there was an amount in the hands of the garnishees, without leaving it to the jury to find that fact. This objection is so clear, that it is deemed unnecessary further to notice this instruction.

*J. A. L. McClure* and *C. J. M. Gwinn*, for the appellees :

1st. As to the motion in arrest of judgment. The *jurat* upon which the warrant for the attachment issued, does not leave it doubtful whether Mr. Dare swore *or* affirmed, for it amounts to, and is a clear and unequivocal statement by the justice, that Mr. Dare both swore *and* affirmed. As it was sufficient for him to swear or affirm under the Act of 1795,

ch. 56, sec. 1, and as it would appear, by the statement of the justice, that he did both, the unnecessary act does not vitiate the *jurat*. *It is not necessary to disregard either as surplusage, Drake on Attach.*, secs. 191, 105, 109; *Warton vs. Conger*, 9 *Smedes & Marsh.*, 510; and this being the case, there is no such *uncertainty*, as the appellant urges. *English vs. Hall*, 12 *Robinson (La.) Rep.*, 132.

2nd. *Appellants' 1st Exception*. In this case the notice given by the commissioner was wrongly entitled, but as the law requires *no notice in writing*, nor limits the proof of such due notice to any specific form, it is sufficient if it appear to the satisfaction of the Court, in which the deposition is offered as evidence, that the opposite party had *due* notice of the taking of the deposition in the very case to which the deposition related. Act of 1828, ch. 165, sec. 2.

Besides as the Act of 1828, ch. 165, sec. 2, provides that the notice shall be given agreeably to the rule of the Court in which the case is pending; this Court must presume, after the admission of the deposition by the Court, that its rule was complied with; for the rule is not set out in the record, *Rutherford vs. Pope*, 15 *Md. Rep.*, 581, and the Court of Appeals must make every necessary intendment in favor of the judgment of the inferior Court. *McMechin vs. The Mayor, &c.*, 2 *H. & J.*, 45. *Rigden vs. Martin*, 6 *H. & J.*, 407. *State vs. Beall*, 9 *G. & J.*, 17. *Lefever vs. Lefever*, 6 *Md. Rep.*, 478. *Fridge vs. State*, 3 *G. & J.*, 44. *Clemens vs. Mayor, &c.*, 16 *Md. Rep.*, 208. *Cherry vs. Baker*, 17 *Md. Rep.*, 77. *Scott vs. Scott*, 17 *Md. Rep.*, 90.

3rd. *Appellants' 2nd Exception*. The requirements of the Act of 1828, ch. 165, are, that proof must be made to the *satisfaction of the Court* "of the inability of the party to procure the attendance of such witness *at the time of the trial*," "and the probable continuance of said inability, until and at the next term of Court before the Court shall permit such testimony to be used." The ability contemplated by the Act of 1828, is the capacity to enforce attendance by summons, and the proof that the witness Tabb

was in Virginia at the time of the trial is proof of the legal inability of the plaintiffs to procure his attendance at that time. *Rogers' Lessee vs. Raborg, et al.*, 2 *G. & J.*, 54.

4th. *Appellants' 3rd Exception.* There was no error in the ruling of the Court below as to this exception. Act of 1825, ch. 117, sec. 1. *Sotheron vs. Weems*, 3 *G. & J.*, 441. *Ellicott vs. Peterson's Ex'rs*, 4 *Md. Rep.*, 484. *Gardener, et al, vs. Hardy, et al.*, 12 *G. & J.*, 380. *Bullitt vs. Musgrave*, 3 *Gill*, 47. *Walters vs. Munroe*, 17 *Md. Rep.*, 158. *Williams vs. Banks*, 5 *Md. Rep.*, 201. *Brown vs. Kimball*, 25 *Wend.*, 265.

5th. The *defendants' 4th, 7th, 8th, 11th and 13th Exceptions*, cannot be sustained, because the evidence sought to be introduced was either *hearsay*, or intended to impeach plaintiffs' witnesses. And if the latter, the Court should have been apprised of the fact. *Wolfe vs. Hauver*, 1 *Gill*, 92; and because the defendants sought to contradict witnesses of the plaintiffs, by giving in evidence statements and conversations of such witnesses, without having previously laid, by cross-examination of the witnesses whom they proposed to contradict, a proper foundation for their questions. *Whiteford vs. Burckmyer*, 1 *Gill*, 139. *Franklin Bank vs. Penn. S. N. Co.*, 11 *G. & J.*, 35. *Angus vs. Smith*, 1 *Moody & Malkin*, 473. (22 *Eng. C. L. Rep.*, 360.) And it is immaterial whether the plaintiffs' witnesses were examined upon the stand or under a commission. *Brown vs. Kimball*, 25 *Wendell*, 259.

6th. *Appellants' 5th Exception.* It was not competent for the defendant, Alfred Ross, who was the justice of the peace before whom the acknowledgment of Mrs. Rees was taken, to show by the testimony of Mrs. Rees that he "did not know the contents of the deed" when he had certified in his official capacity that he had explained the same to her. *Laurenson vs. State*, 7 *H. & J.*, 339. *Hawkins vs. Forsyth, et al.*, 11 *Leigh*, 294. *Nicholas vs. Hemsley*, 3 *H. & McH.*, 409. *Morris vs. Harris*, 9 *Gill*, 28. *Greenlf's Ev.*, secs. 22, 210.

7th. *Appellants' 6th Exception.* It was not competent for North to contradict his official certificate as one of the justices before whom the acknowledgment was taken. *Laurenson vs. State,* 7 *H. & J.*, 339. *Hawkins vs. Forsyth, et al.,* 11 *Leigh.*, 294, 301, 308.

The same authorities suffice to maintain the decision of the Court below on the 9th exception of the defendants.

8th. *Appellants' 10th Exception.* The best evidence of the circumstances connected with the acknowledgment of the deed, was that acknowledgment reduced to writing, and given in evidence in the cause. North could not properly either add to or in any wise vary his certificate by oral testimony as proposed.

9th. *Appellants' 12th Exception.* That the Court below was right on the first branch of this ruling, cannot surely be questioned. The naked denial by a person *sued as a partner* of the existence of a partnership, and his assertion that he would not be responsible for the debts of the alleged partnership, could not certainly be given in evidence to prove that there was no partnership in fact.

The Court was equally correct in its second ruling. For, on any theory that may prevail as to the legal consequences of such a notice, (and we will discuss these theories when we reach the tenth prayer of the Appellant,) it is quite certain, that if Ross was a partner, his notice to the appellees did not affect his responsibility to the appellees upon business claims against the firm of which he was a member, *which had attached before he gave the notice referred to.*

10th. *Appellants' 14th Exception. The seventh prayer of the appellant* is defective, because although the first branch of the prayer may not be wholly objectionable, the last branch which we quote is manifestly wrong. It says: "And if the jury shall believe from the evidence that A. Ross *did not receive any part of the profits of the concern,* and actually gave notice to the plaintiffs on the 1st day of June 1856, that he was not a partner and not responsible

as such, he is not responsible for any credit given the firm afterwards."

The jury by this part of the prayer are instructed that Ross is not responsible as a partner to the appellees, *if he received no part of the profits of the concern of S. D. Rees & Co.* It is quite certain, that *if a partner,* he was responsible even *if there was no profits,* or if there were profits, and he received no part of them. And it is also quite certain, that he was responsible though not a partner, and though he received no part of the profits, if the jury believed that he had held himself out as a partner of that firm, even we may add to persons having notice of the true state of affairs. *Lindley on Partnership, vol.* 102, *Law Lib.,* 252. *Brown vs. Leonard,* 2 *Chitty,* 120. (18 *Eng. C. Law Rep.,* 270.)

The error of the last branch of the seventh prayer we will discuss when we reach the tenth prayer of the appellant.

*The eighth prayer of the appellant* is bad: 1st, because it *assumes* the fact that the note for $3500 *had been sued on by Buckler and Shipley;* and 2nd, because it asserts as matter of law, that the defendants were entitled to be *credited* with a note which the prayer itself shows was *unpaid* and in the *possession* of the *appellees.* See *Ellicott vs. Martin & Love,* 6 *Md. Rep.,* 509.

*The ninth prayer of the appellant* cannot be made the ground of reversal, because the appellant conceded the third prayer of the appellee to be law, and it thus become the law of this case. *Baugher vs. Wilkins' Ex'rs,* 16 *Md. Rep.,* 37, 46. *B. & O. R. R. Co. vs. Resley,* 14 *Md. Rep.,* 442.

By conceding the third prayer of the appellee to be law, the defendant abandoned the theory on which he relies in his ninth prayer, and made the confession of judgment of Samuel D. Rees and Jacob Rees, entered of record in the cause, without entry of release filed, *evidence from which the jury could find a verdict against Alfred Ross for the amount sworn to in the affidavit of attachment.*

*Appellants'* 10*th prayer.* This prayer ought to have submitted to the jury, (because of the theory on which it is based,) that if they found that A. Ross *was a partner* of the firm of S. D. Rees & Co., yet that if they *also* found that he gave the notice referred to, then, &c. For unless the jury found that Ross was a *partner,*. the law attempted to be enforced by this prayer was wholly inapplicable. And the prayer itself is defective upon the theory of law held by the appellant, because it is not based upon the finding by the jury of the fact of a partnership.

It is true that where there are but *two persons* in a firm, and they dissent from each other, it amounts to a temporary suspension of the right and authority of each to carry on and manage the partnership business in respect to all persons having notice of such disagreement. *Willis vs. Dyson,* 1 *Starke's Ev.,* 164. *Story on Partnership, sec.* 123.

But where *there are three partners,* a denial by *one of the partnership* and a notice that he will not be responsible for *any* of the debts of the partnership, works no result whatever. Where there are *three* partners, a majority must decide as to the disposal of the partnership property, within the limits of the objects of the partnership, in the absence of any express stipulations to the contrary. 3 *Chitty's Law of Commerce,* 234. *Collyer on Partnership, Ed.* 1853, *sec.* 197. *Constable vs. Harris, et al.,* 11 *E. C. C. R. Turner & Russell,* 496, 518, 525, 527. *Story on Partnership, sec.* 123. See *Lindley on Partnership,* 102 *Law Lib.,* 424, and cases cited.

Besides the whole point as to the effect of the notice referred to in the appellants' tenth prayer was abandoned, by his conceding the third prayer of the appellees to be the law of this case. For by that concession he admits that there is evidence upon which the jury may find a verdict against Ross, (notwithstanding the notice,) provided they believe the single fact that Ross was a partner of the firm of S. D. Rees & Co. when the debt of that firm to the appellees was created.

*Appellees' Prayers.* The appellees second prayer cannot be made a ground of reversal. It asked the Court to instruct the the jury, that the appellant was not entitled to a particular credit specified in the prayer. The appellant could not by possibility have been injured by such an instruction, because he had *conceded* the third prayer, which authorised the jury to find a verdict against him for the amount sworn to in the affidavit of attachment, *and thus had, himself, formally assented to the exclusion of the credit pointed at in the second prayer of the appellee.*

The appellees' fourth prayer cannot be made a ground of reversal. It is not liable to the objection stated in the argument of the appellant. The Court did not leave the legal construction of the answer of the garnishees to the jury. The words of that prayer, "the plaintiffs pray the Court to instruct the jury, that the answers of Matthews and Zollikoffer, the garnishees in this action, are to be construed by the jury against the garnishees," are to be interpreted by the remainder of the prayer, which shows *that the Court gave to the jury the rule of construction,* which the jury was to apply in construing the answer, so as to enable the jury to arrive at legitimate conclusions of fact in such construction of the answers of the garnishees. The *rule of construction* was for the Court; *the facts to be evolved by the application of this rule were to be construed by the jury.* The very argument in the appellants' brief upon this point, viz: *"The answers were before the jury as evidence,"* concedes the power of the jury to pass upon the fact contained in such answer. How they could do this without construing or interpreting the answer, it is difficult to see. The *rule of interpretation* which the Court directed the jury to apply in this interpretation, was correct. *Bosley vs. Chespeak Ins. Co.,* 3 *G. & J.,* 472. *Drake on Attach.,* sec. 673. *Sebor vs. Armstrong,* 4 *Mass.,* 206. *Cleveland vs. Clapp,* 5 *Mass.,* 201.

The appellees' fifth prayer cannot be made a ground of reversal. The appellant was in nowise injured by the

circumstance that it was granted. If it assumes that the plaintiffs had established a valid claim, so do the third and sixth prayers which the appellants conceded. If it assumes that a debt had accrued and was existing to an amount at least equal to any amount in the hands of the garnishees, so does the sixth prayer which the appellants conceded, because the sixth prayer concedes that the appellees were entitled to a verdict, not only for the twelve hundred dollars referred to in that prayer, but also to a verdict "for the balance of the indebtedness which the jury may find to have existed from the said garnishees to Alfred Ross, when the attachment was laid in the hands of the garnishees." If it assumes that there was an amount in the hands of the garnishee, so does the sixth prayer, which the appellants conceded. *Mutual Safety Co. vs. Cohen,* 3 *Gill,* 481. *Daker vs. Pomeroy,* 9 *Gill,* 1. *Glenn vs. Rogers,* 3 *Md. Rep.,* 322. *Bosley vs. Chesapeake Ins. Co.,* 3 *G. & J.,* 472. *Cross vs. Hall,* 4 *Md. Rep.,* 429. *Eyler vs. Hoover,* 8 *Md. Rep.,* 5. *Roloson vs. Carson,* 8 *Md. Rep.,* 226. *Baugher vs. Wilkins' Ex.,* 16 *Md. Rep.,* 37, 46. *Benson vs. Atwood,* 13 *Md. Rep.,* 22. *Union Bk. vs. Planters Bk.,* 9 *G. & J.,* 439. *Greenway vs. Turner,* 4 *Md. Rep.,* 306.

BARTOL, J., delivered the opinion of this Court:

The first question presented for our decision in this case, arises upon the motion in arrest of judgment; and is to be determined by an examination of the affidavit and warrant upon which the attachment was based. Being a proceeding under the Act of Assembly, before a tribunal of special and limited jurisdiction, it must appear affirmatively on the face of the papers that the requirements of the statute have been substantially complied with, otherwise the Court granting the writ of attachment would be acting without jurisdiction and the proceeding would be void. *Shivers vs. Wilson,* 5 *H. & J.,* 130. *Yerby vs. Lackland,* 6 *H. & J.,* 446. *Wever vs. Baltzell,* 6 *G. & J.,* 345.

The alleged defect disclosed on the face of this record, is in the *jurat* before the justice of the peace, upon which the warrant for the attachment was based; and is supposed to consist in this, that it appears on the face of the paper that the plaintiffs below both swore to and affirmed, the facts therein stated. It is conceded in the argument that the matters alleged are sufficient to justify the warrant for an attachment, and that it would have been sufficient under the statute if they had been verified either by oath or affirmation; but it is contended that when the party has both sworn to and affirmed, the same facts, the proceeding is fatally defective and ought to be declared void.

Looking at the *jurat* alone we find the justice has certified "that the party made oath according to law on the Holy Evangely," and that being conscientiously scrupulous of taking an oath, he did solemnly, sincerely and truly declare and affirm," &c.

It appearing therefore affirmatively that the party did actually make oath according to law, which is sufficient under the statute, the subsequent affirmation may be regarded as surplussage under the decision in the case of *Wharton vs. Conger*, 9 *Smedes & Murshal's*, 510; where, two affidavits appearing of the same facts, one of them was rejected as unnecessary and surplussage. The same rule would apply with equal force to an affidavit and an affirmation, as to two affidavits.

There can be no doubt in this case, that the oath was actually taken, because the certificate of the justice so states, and if there was any doubt or ambiguity in the certificate, the warrant to which it is annexed refers to it as, "the above oath;" and as both must be construed together, all doubt as to the oath having been actually taken is removed. Being of opinion that the *jurat* is sufficient, we concur with the Court below in overruling the motion in arrest of judgment.

*First Exception.* This exception presents the question of the admissibility of the testimony of Magnus Snodgrass, a

witness examined before the commissioner Tormey, under the Act of 1828, ch. 165.

The appellants allege that the testimony was taken without "due notice." The proof is that it was taken on Monday, the 8th day of March 1858, at 12 o'clock M. On the Saturday before, notice in writing was given by the commissioner to Mr. Spencer, the appellants' attorney, of the intention to take the testimony at the time named; but in the written notice the case in which the testimony was proposed to be taken was wrongly entitled. If that error had misled the attorney, or, perhaps, if the question rested entirely on the sufficiency of the written notice alone, the objection might be well taken. It appears, however, from the letter and affidavit of Mr. Spencer and the certificate of the commissioner returned with the testimony, that Mr. Spencer knew "inferentially" the case to which the notice referred, and was informed of the name of the witness to be examined, and signified his intention to be present at the examination. We think, therefore, the notice actually received by Mr. Spencer was sufficient. The Act requires "due notice" to be given, agreeably to the rule of Court in which the case is pending. In the absence of proof as to the rule of Court, it must be assumed, where the Court has admitted the evidence, that the notice given was in conformity with its rule. In our opinion the evidence of Snodgrass was properly admitted.

*2nd Exception.* We are also of opinion there was no error in the ruling of the Circuit Court in the second bill of exceptions. It appears from the testimony of the witness Tabb, and of McClure, that Tabb had resided in Maryland till July 1859, when he left it and went to Virginia, whence he had been shipping produce; he was examined before the commissioner in Baltimore on the 11th day of October 1859, and stated that he then claimed Maryland as his residence, but was going to Virginia that week, and, as far as he knew, intended to reside there. When the testimony was offered at the trial he was in Martinsburg, Vir-

ginia, without any definite purpose of returning to Maryland. He was therefore out of the reach of the Court's process, so that the plaintiffs could not enforce his attendance by summons. These facts are sufficient under the Act of 1828, to entitle the plaintiffs to read the deposition at the trial. See *Rogers' Lessee vs. Raborg & Redding,* 2 *G. & J.,* 54.

*3rd Exception.* By agreement of counsel a commission was issued to Reily and Clark of Winchester, "Virginia," to take testimony of such witnesses as *"may be brought before them, without further notice, upon the interrogatories and cross-interrogatories which have been heretofore filed in the case."*

When the commission was returned, besides the interrogatories and cross-interrogatories which had been filed in Court and sent with the commission, there appeared several additional interrogatories and the answers of the plaintiffs' witnesses thereto, some of which were propounded by the commissioner and others by the plaintiffs at the time of taking of the testimony. The evidence thus taken under the commission had not been read or offered by the plaintiffs at the trial. But as this bill of exception states, the defendants offered the same as taken by the plaintiffs, and proceeded to read it to the jury. When he had read the interrogatories that had been filed in the cause and sent with the commission, and the answers of Barton one of the witnesses thereto, the plaintiffs' counsel insisted that the defendants' counsel should read the whole deposition, including all the testimony taken on the special interrogatories, or otherwise, which was objected to by the defendants' counsel, but the Court decided that if the defendants read the deposition, the whole deposition ought to be read to the jury, and the defendants excepted to this ruling of the Court.

We have thus stated at length the matters contained in this bill of exceptions, in order that the very question it presents may be more clearly understood.

It may be added also, that after the return of the commission, the defendants' counsel filed exceptions to the admissibility of the evidence taken in answer to questions not sent with the commission, and the Court in disposing of that exception said: "Exception sustained, no supplementary interrogatories or questions would be regular unless the party against whom the answer is to be used had notice, or by his assent, or by the terms of the commission, it was allowed."

We take the rule thus stated by the Court to be correct; and as amounting to a decision excluding as irregular and inadmissible that portion of the testimony returned with the commission, which the Court afterwards required the defendants' counsel to read to the jury.

The counsel of the appellee in support of this ruling by the Court, places his argument, not on the ground that the evidence in question was legally admissible, but insists that the Court could not determine that question until the whole was read, because peradventure something might be disclosed showing that such additional questions had been asked, with the knowledge and assent of the defendants; or that they had waived objection thereto, and if that did not appear, the proper course for the defendants' counsel would have been to ask the Court to withdraw or exclude the testimony from the consideration of the jury.

It will be seen, therefore, that the dispute before us is one rather of form than of substance, and involves the question as to the proper mode to be adopted by the defendants in availing themselves of their objection to the testimony, rather than an inquiry into the validity of the objection itself; and, as such, is a question of practice which we do not remember to have seen before distinctly presented or decided. We think, however, it is one easily solved.

Under the agreement for the commission, it is clear that all questions propounded to the witnesses, which had not been before filed in Court, would be irregular, and properly subject to exception; and when the exception was

Matthews & Zollikoffer, garnishees, *vs.* Dare & McClure.

taken and sustained by the Court, it was equivalent to striking them from the commission. It is true, that by the decision of the Court, it was very properly left open for the appellee to avoid the objections patent on the face of the agreement and the commission, by showing facts that would remove or cause the irregularity. No such proof however was offered by the appellee, nor did it appear to the Court; and, without that, the admissibility of the evidence was to be determined *per se*, and being irregular and illegal, it was error for the Court to require it, or when objected to, to allow it to be read to the jury. See *Farmers & Mechanics Bank of Carroll Co. vs. Allen*, 18 *Md. Rep.*, 475, 479.

*4th, 7th, 8th, 11th and 13th Exceptions.* These exceptions all present the same question of law, and may be considered together. In each of them we think the evidence offered by the appellees was inadmissible, and properly excluded by the Court; some part of it was liable to the objection of being mere hearsay. See *Wolfe vs. Hauver*, 1 *Gill*, 92. What was not obnoxious to this objection, could have been admissible only for the purpose of impeaching certain witnesses who had testified in the cause on behalf of the appellees, by proving that they had on other occasions made statements at variance with their testimony

By the well settled rules of law, this mode of discrediting a witness is not allowed, unless a proper foundation be previously laid by interrogating the witness on the subject of the alleged variance, and affording him an opportunity for explanation. *Franklin Bank vs. Penn. S. N. Co.*, 11 *G. & J.*, 35. *Whiteford vs. Burkmeyer*, 1 *Gill*, 139. See also, *Angus vs. Smith*, 1 *Moody & Mal.*, 473. (22 *Eng. C. Law Rep.*, 360.)

In our opinion the same rule governs when the testimony of the witness is taken under a commission, as where he is examined on the stand at the trial. Under this rule, in the opinion of this Court, the action of the Superior Court in these exceptions, ought to be affirmed.

*5th Exception.* This exception was taken by the appellants, to the rejection of the deposition of Mrs. Margaret Rees. The deposition was objected to below (as appears by the bill of exceptions) on the ground "that Mrs. Rees was not a competent witness, from interest, and also because the answers to the interrogatories in her deposition were not admissible evidence." The Court rejected the deposition on the ground "that she was estopped from giving testimony." In the argument of the cause by the appellees, the objection made below to the competency of the witness on the ground of interest, was properly abandoned; but it was contended that the defendant being one of the justices before whom the acknowledgment was made, (of the deed of the 10th of July 1856,) was estopped by his official certificate from showing that he did not know the contents of the paper, or that he did not explain the same to Mrs. Rees. This is a question of some difficulty and it has been most carefully considered. In order that the judgment of this Court may be clearly understood, it is necessary to state the manner in which the question of estoppel arises.

One of the issues before the jury was, whether the defendant Alfred Ross was a partner of S. D. Rees and Jacob Rees. To support the *affirmative* the appellees offered in evidence a deed made by S. D. Rees, and Margaret his wife, to David Rees, containing a recital "that Samuel D. Rees, Jacob Rees and Alfred Ross, are and have been for a number of years, co-partners in the milling business." Alfred Ross not being a party to the deed, nor shown to have had any agency in its preparation, would of course not be bound by any recital it might contain. It appears, however, that the deed was acknowledged by the grantors before William D. North and Alfred Ross, two justices of the peace, who certify "that Mrs. Rees was privately examined by them, apart from her husband, *and having said writing fully explained to her,*" acknowledged the same, &c.; and it being proved that Alfred Ross the justice, and

the defendant, are the same person, it is contended that he is conclusively bound by his own official certificate, and cannot deny or disprove its truth, by showing that the deed was not read or explained to Mrs. Rees.

In *Copeland's* case, decided at June Term 1862, (18 *Md. Rep.*, 305,) this Court had occasion to consider the force and effect of the certificate of the acknowledgment of a deed made by a justice in the performance of official duty, and although it was held in that case as between the parties litigant (where it was charged that the deed was obtained by fraud and duress of the parties claiming under it or their agents,) that the statements contained in the certificate were open to contradiction by proper and competent proof, yet it was also held that from considerations of public policy, the justice who took the acknowledgment was an incompetent witness to contradict or impeach his certificate.

The same principle, it seems to us, must apply where the certificate of the justice is offered in evidence against him in any cause where he is a party. The certificate is his official act done under the solemn sanction of his oath, in the performance of a duty imposed on him by law; and though under some circumstances it may be impeached by others, he is precluded from denying the truth of what he has officially certified.

In the argument of this point the ingenious counsel for the appellants contended, that the justices' certificate imported no more than that the writing was explained to Mrs. Rees so far only as it affected her rights and interests in the property, and could not be taken as conclusively establishing the fact that the justices knew every part of its contents. But the effect of the certificate as evidence, from which it might be inferred that Ross had knowledge of all the contents of the deed, was a question for the jury. The particular question for us to decide, is, whether it was competent for Ross, in the face of his official certificate, to prove that the deed was not read or explained to Mrs.

Rees; and in our opinion it was not competent for him to do so, and for this reason the deposition was properly excluded.

In disposing of this exception we have assumed, that the justices' certificate was made in the performance of official duty required of them by law. We understood the counsel on both sides to concede in the argument, that the acknowledgment was made in conformity with the laws of Virginia, regulating the execution of deeds by *femes coverts*.

*6th, 9th* and *10th Exceptions.* For the reasons assigned in deciding the 5th exception, we think the ruling of the Superior Court, as stated in these exceptions, ought to be affirmed.

*12th Exception.* We think there was no error in the instruction given to the jury as to the legal effect of Holmes' testimony. The question whether the defendant Ross was or was not a partner of S. D. Rees & Co., was one for the jury to decide upon the evidence; the declaration of Ross himself made to the appellees, to the effect that he was not a partner, could not be received as any evidence to disprove the fact of partnership. Nor could the notice that he would not be responsible for the debts of the partnership operate to discharge him from liability for any debts then existing; provided the jury should find that he was actually a partner. This we understand to be substantially the ruling of the Court from which this exception was taken. If the jury should find that all the appellees' claim against S. D. Rees & Co., originated after the 1st day of June 1856, then the appellants could not be injured by the Court's instruction.

*14th and 15th Exceptions.* These exceptions were taken by the appellants to the rejection of their seventh, eighth, ninth and tenth prayers, and to the granting of the second, fourth and fifth prayers of the appellees.

The appellants' prayers will first be considered:

The 7th and 10th present the question of the effect of

Matthews & Zollikoffer, garnishees, *vs.* Dare & McClure.

the notice given to the plaintiffs by the defendant Alfred Ross on the first day of June 1856, "that he was not a partner of S. D. Rees & Co., and would not be responsible for their debts." By the tenth prayer this notice, if found by the jury, is relied on as a conclusive defence to the plaintiffs' demand against Alfred Ross on account of any advances made to the firm after that date. The seventh prayer presents substantially the same proposition, for the other fact incorporated therein, "that A. Ross did not receive any part of the profits of the concern," does not in any manner vary the question. It was well argued by the appellees' counsel that there may have been in fact no profits for him to receive, although he may have been a partner and entitled to a share of the profits. One objection to the tenth prayer argued by the appellees' counsel, was that it ought to have submitted in terms to the jury, as the basis on which it rests, to find that A. Ross was a partner of S. D. Rees & Co., because unless they should so find, the instruction asked as to the effect of the notice would be inapplicable. We think this objection is not well taken. It is true the theory of the prayer assumes that Ross was a partner; but as that is an assumption of a fact in favor of the appellees, and insisted on by them as the ground of their action, they cannot be heard to complain of its assumption by the appellants as the basis of their prayer. The real question presented by these prayers, is, whether the legal effect of the notice is to discharge Ross from liability for the debts of S. D. Rees & Co. afterwards contracted with the plaintiffs, although he may have been and continued a partner.

It seems to be well settled that one partner may exempt himself from future liability by giving express previous notice to a third person that he will be no longer bound for notes or drafts drawn by his co-partners in the name of the firm. See *Galway vs. Matthews & Smithson*, 1 *Camp*, *N. P. Rep.*, 403. Same case 10 *East*, 264. *Wallis vs. Dyson*, 1 *Starkie R.*, 164. *Vice vs. Fleming*, 1 *Young & Jervis*, 227.

35      v. 20.

*Leavitt vs. Peck,* 3 *Conn. R.,* 124. *Collyer on Partnership,* Book 3, *ch.* 1, *p.* 214. *Lindley on Partnership,* 267, 268. (102 *Law Lib.,* 251, 252.) These authorities would seem to be conclusive in favor of the proposition contended for by the appellants.

In the case of *Vice vs. Fleming, Alexander, C. B.,* said: "This question turns entirely upon the construction of the notice, which is in effect that the defendant had sold his interest in the mine to certain persons, who for the future would be liable for all supplies to the mine, and that he, the defendant, would on that account be no longer responsible. It is clear that the defendant might by an absolute notice have discharged himself from all future liability, whether he continued or ceased to be a partner; but this is a representation only that the security of other persons was to be substituted in his stead. Then what construction is to be put upon this notice? It should have been left to the jury as was done in the case of *Wallis vs. Dyson,* to say whether it amounted to a notice that he would not be answerable for any goods subsequently supplied." All the judges concurred in that opinion. In that case the terms of the notice being ambiguous, it was held that its purport and effect must be decided by the jury. Here the notice according to Holmes' testimony, was that the defendant would not be responsible for the debts of S. D. Rees & Co. This brings the case within the decision of *Galway vs. Matthews & Smithson,* and if believed by the jury, would exempt the defendant from liability for debts subsequently contracted, unless the plaintiffs could prove some act of adoption by Ross afterwards, or that he derived some benefit from advances subsequently made to the firm. The seventh and tenth prayers of the appellants ought to have been granted.

8th. The eighth prayer will be considered in connexion with the appellees' second.

9th. In the opinion of this Court the appellants cannot complain of the rejection of their ninth prayer. By con-

Matthews & Zollikoffer, garnishees, vs. Dare & McClure.

ceding the third prayer of the appellees, they admitted that the confession of judgment by C. D. Rees and Jacob Rees, entered of record in the cause without entry of release, was evidence from which the jury might find a verdict against Ross for the amount sworn to in the affidavit of attachment. This concession precludes the appellants from insisting on the proposition stated in their ninth prayer. *Pettigrew vs. Barnum, et al.*, 14 *Md. Rep.*, 442. *Baugher, et al., vs. Wilkins' Exc'rs*, 16 *Md. Rep.*, 37, 46.

The eighth prayer of the appellants and the second prayer of the appellees, raise the question of the appellees' right to a credit upon the claim sued on, for the note of $3500 mentioned in the prayers. The eighth prayer is objectionable in form as it assumes the fact that the note had been sued on by Buckley and Shipley, instead of leaving that fact to the jury, and for that reason the action of the Superior Court in rejecting it will be affirmed. Apart from that formal objection we are of opinion that the facts therein stated, if found by the jury, are sufficient to entitle the appellants to the credit claimed.

In the case of *Glenn vs. Smith*, 2 *G. & J.*, 493, 508, the general rule was stated to be, "that the acceptance of a security or undertaking of equal degree, is of itself no extinguishment of the former debt. Thus the acceptance by a creditor from his debtor of his promissory note, for an antecedent simple contract debt, does not extinguish the original debt, (both being of equal degree in the eye of the law,) if it remains in the hands of the creditor unpaid, and he can produce it to be cancelled or show it to be lost. But he will not be suffered to recover on the original cause of action, unless he can show the note to have been lost or produces it at the trial to be cancelled." See also *Morrison vs. Welty*, 18 *Md. Rep.*, 176, and cases there cited.

Under that rule it is not enough that the plaintiffs should "be in possession of the note and in readiness to deliver it up at the trial table" as stated in the second prayer of the appellees. It ought to have been *actually*

produced so that it might be impounded in Court for can-
cellation or be cancelled.   We think, therefore, the Court
erred in granting the appellees' second prayer.

We do not concur in the view presented by the appel-
lees' counsel, that the concession of the third prayer pre-
cludes the appellants from claiming the credit mentioned.
The third prayer admitted the judgment to be evidence
from which the jury might find a verdict for the whole
amount of the claim sued on, but it did not concede that
the judgment was conclusive evidence.   It was therefore
competent for the appellants notwithstanding any thing
contained in the third prayer to claim any credit to which
they might show themselves entitled by proof.

There was no error in granting the appellees' fourth
prayer, the general rule of construction therein stated is
correct.   The point of the instruction is contained in the
last clause of the prayer, which relieves it from all objec-
tion on account of any alleged vagueness and uncertainty
that might mislead the jury.

The fifth prayer of the appellees is fatally defective and
ought not to have been granted.   It assumes that the ap-
pellees' claim against S. D. Rees & Co., was established
without the intervention of the jury, whose province it was
to pass upon it.

While this defect in the prayer is conceded by the ap-
pellees' counsel, they contend that it is cured by the acqui-
escence of the appellants in the granting of the sixth pray-
er, in which it is alleged the same fact is assumed.   With-
out expressing any opinion upon the sufficiency of this an-
swer to the objection, it is sufficient for us to say that we
do not so construe the sixth prayer.   It requires the jury
to find as a part of its hypothesis that the indebtedness of
S. D. Rees & Co., to the plaintiffs, was to such an amount
as to require the whole of said $1200 towards its satisfac-
tion.   This, in our opinion, submitted to the jury, though
perhaps not in a very clear or artistic form, the question of
indebtedness from S. D. Rees & Co. to the plaintiffs.   It

is difficult to understand how the jury could find that such indebtedness equalled a certain amount, without first determining, as a preliminary question involved in the inquiry, the fact of some indebtedness actually existing.

The ruling of the Superior Court is affirmed on the motion in arrest of judgment, and on the 1st, 2nd, 4th, 5th, 6th, 7th, 8th, 9th, 10, 11th, 12th and 13th exceptions, and reversed on the 3rd, 14th and 15th exceptions.

*Judgment reversed, and procedendo ordered.*

(Decided Oct. 30th, 1863.)