## JOHN THOMAS CRAWFORD v. STATE OF MARYLAND

[No. 1143, September Term, 1976.]

*Decided July 11, 1977.*

The cause was argued before GILBERT, C. J., and MENCHINE and MASON, JJ.

*W. Kennedy Boone, III, Assigned Public Defender,* for appellant.

2

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *John S. Hollyday, State's Attorney for Washington County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Cheryl Marie Adams was observed by a passing motorist on Route 40 "walking down on the side of the road with blood all over the side of her face, actually all over her face." Police were called and she was taken to the Washington County Hospital. She had sustained two gunshot wounds of the head. The wounds produced blindness of the right eye. The position of the bullets within the skull was such as to inhibit their removal. A jury in the Circuit Court for Washington County, convicted John Thomas Crawford of assault with intent to murder her. He was sentenced to imprisonment for thirty years.

In his appeal to this Court appellant contends:

1. That testimony given by Cheryl Marie Adams at a preliminary hearing in the District Court of Maryland for Washington County was erroneously admitted in evidence at the jury trial in the Circuit Court; and

2. That his motion for revision of verdict was erroneously denied.

### 1. *Admission of Testimony Taken at Preliminary Hearing*

The rule seems universal that testimony taken at a former trial may be admitted in evidence at a second trial in appropriate circumstances as an exception to the general rule proscribing hearsay evidence, when the witness is no longer available. The text writers seem to make no distinction between a former trial and a preliminary hearing. In McCormick, *Evidence,* Ch. 25 § 258 at 622 (2nd Ed. HB 1972), it is said:

> "If the accepted requirements of the administration of the oath, adequate opportunity to cross-examine on substantially the same issue, and

present unavailability of the witness, are satisfied then the character of the tribunal and the form of the proceedings are immaterial, and the former testimony should be received. Accordingly, when these conditions are met, testimony taken before arbitrators, or before a committing magistrate at a preliminary hearing, or in a sworn examination before the Comptroller by the Corporation Counsel of a person asserting a claim against a city, or at a driver's license revocation hearing, or at a broker's license revocation hearing, has been held admissible."

In 2 Jones on *Evidence*, § 9:22 at 229-230 (6th Ed. 1972), it is said:

"Testimony which has been given by a witness in a former action or at a former stage of the same action, where it meets certain conditions as hereinafter mentioned, is admissible in a subsequent proceedings, under an exception to the hearsay rule."

In 3 Wharton's *Criminal Evidence*, § 650 at 371-375 (13th Ed. Torcia 1973), it is said:

"As an exception to the hearsay evidence rule, the testimony of a witness at a preliminary hearing or former trial may be allowed in evidence at a subsequent trial if a proper foundation has been laid, including a showing that the witness is no longer 'available'. Whether a proper foundation has been laid is a question for the trial judge in his discretion to resolve, and his ruling will not be disturbed unless there has been a clear abuse of such discretion. This use of a former witness' testimony is not violative of the accused's constitutional right 'to be confronted with the witnesses against him' if, at the preliminary hearing or former trial, the accused had been accorded an adequate opportunity to cross-examine

such witness. As in the case of any testimony, the weight to be accorded reproduced testimony is for the jury to determine."

In Annot., 159 A.L.R. 1240 (1945), it is said at 1242:

"The rule stated in the previous annotations on this subject that the reproduction of testimony taken in the presence of the accused at a former trial or preliminary hearing, at a later trial when the presence of the witness cannot be secured, does not contravene the right of the accused guaranteed him by the state constitution to be confronted with the witnesses against him, has been affirmed . . ."

Early appellate decisions clearly support the text writers' view that testimony at preliminary hearing, in appropriate circumstances, may be received in evidence at the later trial. *See, e.g., State v. Gaetano,* 96 Conn. 306, 114 A. 82 (1921); *State v. Stewart,* 85 Kan. 404, 116 P. 489 (1911); *Warren v. State,* 6 Okla. Crim. 1, 115 P. 812 (1911); *Commonwealth v. Ryhal,* 274 Pa. 401, 118 A. 358 (1922); and *Porch v. State,* 51 Tex. Crim. 7, 99 S. W. 1122 (1907).

The precise question before us is one of first impression in this State, although the Maryland position generally on admissibility of prior testimony was thus clearly and succinctly stated by Judge Henderson (now retired) for the Court of Appeals in *Contee v. State,* 229 Md. 486, 491, 184 A. 2d 823, 825-826 (1962):

"It is well settled that testimony taken at a former trial may be admitted, if it be shown that the witness is dead, insane, or beyond the jurisdiction of the court, or on diligent inquiry cannot be located, or that some other circumstance exists which shows that the witness who gave the testimony at the former trial cannot be procured as a witness at the second trial. This general rule was stated in *Hendrix v. State,* 200 Md. 380, 387, and in somewhat different form in *Bryant v. State,* 207 Md. 565, 587. See also *Marshall v. Haney,* 9 Gill.

251, 257; *Rogers v. Raborg,* 2 G. & J. 54, 60; *Bowie v. O'Neale,* 5 H. & J. 226, 234. For a discussion of the principles involved and the authorities elsewhere, see 5 Wigmore, *Evidence* (3rd ed.) § 1406 et seq.; 2 Jones, *Evidence* (5th ed.) § 313; 2 Wharton, *Criminal Evidence* (12th ed.) § 479; Notes 15 A.L.R. 495; 79 A.L.R. 1392; 122 A.L.R. 425; 159 A.L.R. 1240. The writers and authorities all agree that where there was an opportunity to cross-examine the witness in the former trial, there is no violation of the right to be confronted with the witnesses against the accused, under Art. 21 of the Maryland Declaration of Rights or under the Due Process clause of the Fourteenth Amendment to the Federal Constitution. Since there is no constitutional right involved, there has been a discernible tendency, we think, to liberalize the rule, which was first applied *ex necessitate* in case of death."

Appellant, however, urges that recent decisions of the Supreme Court destroy the continued viability of the rule insofar as testimony given at a preliminary hearing is concerned. He cites *Pointer v. Texas,* 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965), and *Barber v. Page,* 390 U. S. 719, 88 S. Ct. 1318, 20 L.Ed.2d 255 (1968), as supportive of that contention. We think that neither *Pointer* nor *Barber* paints with so broad a brush.

In *Pointer, supra,* the Supreme Court did indeed reverse the judgment of a State court wherein a transcript of testimony given at a preliminary hearing had been admitted and announced its holding in the following words:

"We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment." 380 U. S. at 403, 85 S. Ct. at 1068, 13 L.Ed.2d at 926.

The Supreme Court explained, however, that its decision

stemmed from the circumstance that opportunity for cross-examination had not existed at such preliminary hearing:

"Under this Court's prior decisions, the Sixth Amendment's guarantee of confrontation and cross-examination was unquestionably denied petitioner in this case. As has been pointed out, a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him. See, *e.g., Dowdell v. United States,* 221 U. S. 325, 330; *Motes v. United States,* 178 U. S. 458, 474; *Kirby v. United States,* 174 U. S. 47, 55-56; *Mattox v. United States,* 156 U. S. 237, 242-243. Cf. *Hopt v. Utah,* 110 U. S. 574, 581; *Queen v. Hepburn,* 7 Cranch 290, 295. This Court has recognized the admissibility against an accused of dying declarations, *Mattox v. United States,* 146 U. S. 140, 151, and of testimony of a deceased witness who has testified at a former trial, *Mattox v. United States,* 156 U. S. 237, 240-244. See also *Dowdell v. United States, supra,* 221 U. S., at 330; *Kirby v. United States, supra,* 174 U. S., at 61. Nothing we hold here is to the contrary. The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine. Compare *Motes v. United States, supra,* 178 U. S., at 474. There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses. The case before us, however, does not present any situation like those mentioned above or others analogous to them. Because the transcript of Phillips' statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity

to cross-examine Phillips, its introduction in a federal court in a criminal case against Pointer would have amounted to denial of the privilege of confrontation guaranteed by the Sixth Amendment. Since we hold that the right of an accused to be confronted with the witnesses against him must be determined by the same standards whether the right is denied in a federal or state proceeding, it follows that use of the transcript to convict petitioner denied him a constitutional right, and that his conviction must be reversed." 380 U. S. at 406, *et seq.*, 85 S. Ct. at 1069, *et seq.*, 13 L.Ed.2d at 928, *et seq.*

We think the decision of the Supreme Court in *Barber v. Page*, supra, was grounded upon lack of a good faith effort to obtain the presence of the witness. The Supreme Court declared:

"It is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. *E. g., Mattox v. United States*, *supra* (witnesses who testified in original trial died prior to the second trial). This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement." 390 U. S. at 722, 88 S. Ct. at 1320, 20 L.Ed.2d at 258.

The Court went on to say:

"In this case the state authorities made no effort to avail themselves of either of the above alternative means of seeking to secure Woods' presence at petitioner's trial. The Court of Appeals majority appears to

8

have reasoned that because the State would have had to request an exercise of discretion on the part of federal authorities, it was under no obligation to make any such request. Yet as Judge Aldrich, sitting by designation, pointed out in dissent below, 'the possibility of a refusal is not the equivalent of asking and receiving a rebuff.' 381 F. 2d, at 481. In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." 390 U. S. at 724-725, 88 S. Ct. at 1322, 20 L.Ed.2d at 260.

It is true that the Supreme Court added:

"Moreover, we would reach the same result on the facts of this case had petitioner's counsel actually cross-examined Woods at the preliminary hearing. See *Motes v. United States,* 178 U. S. 458 (1900). The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case." 390 U. S. at 725-726, 88 S. Ct. at 1322, 20 L.Ed.2d at 260.

It is the language used in the last above quoted paragraph of the Supreme Court's decision in *Barber, supra,* upon which the appellant relies in the subject case for his contention that testimony at a preliminary hearing is, *ipso facto,* inadmissible in the subsequent trial. We do not read that language as establishing a *per se* exclusionary rule.

We think that the Supreme Court itself has rejected the thought that its decisions in *Pointer* and *Barber,* both *supra,* should be so broadly applied. In the later case of *California v. Green,* 399 U. S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court said:

> "We also think that Porter's preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel — the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him. That being the case, we do not think a different result should follow where the witness is actually produced.
>
> "This Court long ago held that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause. *Mattox v. United States,* 156 U. S. 237 (1895). That case involved testimony given at the defendant's first trial by a witness who had died by the time of the second trial, but we do not find the instant preliminary hearing significantly different from an actual trial

to warrant distinguishing the two cases for purposes of the Confrontation Clause. Indeed, we indicated as much in *Pointer v. Texas*, 380 U. S. 400, 407 (1965), where we noted that '[t]he case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine.' And in *Barber v. Page*, 390 U. S. 719, 725-726 (1968), although noting that the preliminary hearing is ordinarily a less searching exploration into the merits of a case than a trial, we recognized that 'there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable . . . .' In the present case respondent's counsel does not appear to have been significantly limited in any way in the scope or nature of his cross-examination of the witness Porter at the preliminary hearing. If Porter had died or was otherwise unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing — the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement, as long as the declarant's inability to give live testimony is in no way the fault of the State." 399 U. S. at 165-166, 90 S. Ct. at 1938-1939, 26 L.Ed.2d at 501.

Finally, in *Mancusi v. Stubbs*, 408 U. S. 204, 92 S. Ct. 2308, 33 L.Ed.2d 293 (1972), the Supreme Court referred to its recent decisions dealing with the Confrontation Clause and made plain they constituted no departure from long held constitutional views. The Supreme Court said:

"In addition to *Barber v. Page*, recent decisions of this Court that have dealt at some length with the

requirements of the Confrontation Clause are *California v. Green*, 399 U. S. 149 (1970), and *Dutton v. Evans*, 400 U. S. 74 (1970). The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra*, at 89, and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra*, at 161. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability' referred to in *Dutton*.

"At least since the decision of this Court in *Mattox v. United States*, 156 U. S. 237 (1895), prior-recorded testimony has been admissible in appropriate cases." 408 U. S. at 213, 92 S. Ct. at 2313, 33 L.Ed.2d at 301-302.

We think these decisions of the Supreme Court do no more than to require (1) that a reasonable opportunity for cross-examination by counsel at the preliminary hearing be accorded, or other indicia of reliability shown such as afforded the trier of fact a satisfactory basis for evaluating the truth of the prior statement, and (2) that the record demonstrate that diligent efforts to obtain the personal attendance of the witness had been made. Otherwise stated, these recent decisions should be interpreted as mandating careful consideration by the trial judge of all of the circumstances surrounding the making of the prior record and requiring clear demonstration that diligent efforts to obtain the personal attendance of the missing witness were made by the State.[1]

---

1. For an in-depth analysis of the effect of the constitutional sanction of confrontation see 5 Wigmore, Evidence, § 1397 (Chadbourne rev. 1974).

12

In turn, we perceive it to be our duty, on appeal, carefully to examine the record and make our own independent review of the record as a whole to determine whether any constitutional right assured by the Confrontation Clause of the Sixth Amendment has been denied. We think no constitutional right was abridged.

In the subject case, as in *California v. Green, supra,* the testimony at the preliminary hearing "had already been given under circumstances closely approximating those that surround the typical trial." 399 U. S. at 165, 90 S. Ct. at 1938, 26 L.Ed.2d at 501. Appellant "had been given a complete and adequate opportunity to cross-examine," (*Pointer v. Texas,* 380 U. S. at 407, 85 S. Ct. at 1069-1070, 13 L.Ed.2d at 928) and had exercised that opportunity.

The trial judge conducted a full hearing, out of the presence of the jury, upon the question whether diligent efforts had been made by the State to obtain the personal attendance of the missing witness. We think it will suffice to say that the State filed proceedings in the Superior Court of the District of Columbia (the witness resided within the District of Columbia) seeking the assistance of that court in obtaining the attendance of the witness in the Maryland court pursuant to the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (Cts. & Jud. Proc. §§ 9-301 — 9-307, inclusive).

The record shows that two detectives of the Metropolitan Police Force were assigned to the search for the witness; that on or about fourteen occasions they attempted to locate her at her school, at her mother's home and at her mother's place of employment. The mother ran from the back door of her place of employment to avoid them, finally quitting her job. The mother called the home of one of the officers protesting their harassment and declaring that the daughter was living with her father at an address she refused to disclose.

We think that the recited efforts by the State to obtain the attendance of the witness fully meet the requirements mandated by *Barber, supra. Compare Brooks v. State,* 35 Md. App. 461, 468, *et seq.,* 371 A. 2d 674, 677, *et seq.* (1977).

In the subject case, Cheryl Marie Adams had given testimony under oath at a preliminary hearing in the District Court of Maryland for Washington County. The accused was in attendance and was represented by counsel.

She testified in substance that she was fourteen years old; that she left Washington, D. C. with the appellant in his automobile; that appellant stopped the vehicle on the roadside en route to Cumberland, Maryland, and both alighted; that "he took the gun and he put it in his waistband." She then testified that:

> "He told me to stand up on this hill, so I stood up there. There was a little piece of rock that was up there I was standing on. He said — look around the side of those trees, you'll see it and so I looked. Actually I knew what was going to happen but I wasn't really sure, so I just went along with it and so he struck me in the back of my head. He expected me to fall down the hill but I didn't fall, I fell the opposite way. He shot at me about three or four times and then he kicked me in the stomach and then he left.

Q At this point, now when you left the car was there anyone in the car but the two of you?

A There was no one in the car but the two of us."

On cross-examination, the witness denied knowing a man named Robert Rogers or that she had ever heard her family or anybody in her area talk of a man bearing that name.

The appellant, testifying in the substantive trial below, told an entirely different story. He testified that Robert Rogers, about 26 years old, a friend of Cheryl Marie Adams, had been picked up en route. He explained that Rogers' nickname was "Prees." He thus described events occurring on the road to Cumberland:

> "Cheryl had promised my youngest sister-in-law, that the next time she came up, she would bring her friend Prees along to meet her. Anyway, he agreed that he would come

along and meet the rest of my family. He had never met my in-laws or my wife, so we had agreed to pick him up for that purpose.

\* \* \*

Q Alright now, what, if anything unusual happened on Route 40 in Washington County while this trip was under way?

A There was a lot of dissension between the younger ones about Cheryl moving to Cumberland.

Q Now what do you mean 'dissension'?

A Because Prees was against this, he didn't want her to move up there.

\* \* \*

Q Then what happened after that?

A Well, I finally told him, I told Prees that I was going to put him out of the car and that he definitely was not going to Cumberland.

\* \* \*

Q Alright now, what happened when you stopped the car?

A I asked him to get out of the car and she told me that if he got out she had to get out. I went around on the passenger side of the car and he and I had a little scuffle.

\* \* \*

Q What happened to you and Prees at that time?

A Well, we had a little scuffle and he had a pistol on him and I took him down into the bushes and I took the pistol from him and threw it down into the bushes and then Cheryl got out of the car and she decided to stay with him and I told her if she stayed with him now, don't ever call on me again for anything."

Appellant then categorically denied the Adams version of events.

We perceive no error in the admission of the prior testimony. We see no violation of the Confrontation Clause of the Sixth Amendment.

### 2. *Denial of Motion to Revise Verdict*

On May 27, 1976, following appellant's conviction, he was remanded to the Washington County Detention Center pending a presentence investigation.

On July 7, 1976, the appellant filed a document in the circuit court entitled "Motion to Revise Verdict." The motion alleged, *inter alia*:

> "That subsequent to the aforesaid trial the alleged victim, Cheryl Marie Adams, on June 24, 1976, sent by mail to, among others, Honorable Paul Ottinger, the State's Attorney and Defense Counsel, an affidavit and sworn statement of Cheryl Marie Adams wherein she states that the Defendant did not assault the said Cheryl Marie Adams on September 22, 1975 and that he was not responsible for same. A copy of the Affidavit and Statement is attached to this Motion and marked as Exhibit One." [2]

Hearing was commenced upon the motion on August 5, 1976, at which time Cheryl Marie Adams was called as a witness by the appellant. She testified that she had not appeared at appellant's trial because, "I didn't know anything about it." She explained that she had been staying with her father in New York until the last of June and, hearing of the trial and conviction had made a sworn

---

2. *See* Maryland Rule 764 b 3, reading as follows:

"Newly Discovered Evidence.
The court may, pursuant to a motion filed within the time set forth in subsection 1 of this section, grant a new trial or other appropriate relief on the ground of newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under section a of Rule 759 (Motions After Verdict)."

statement repudiating her prior statements at the preliminary hearing. At the hearing she said that John Thomas Crawford did not in fact assault and shoot her, accusing instead an alleged boyfriend, Robert Rogers. She explained that she had accused Crawford because, "I had been threatened by [Robert Rogers] many times before the accident happened." She said that she had no personal contact with Robert Rogers since September of 1975, but had received threatening letters from him and his friends. She acknowledged that she had told a State trooper on the day after the incident that the appellant had shot her. She acknowledged that she had made similar accusations against him (a) at the preliminary hearing; (b) at a hearing before the Grand Jury.

Additional testimony was taken on the motion on August 11, 1976. Personnel employed at the Washington County Detention Center testified that Edith Adams, mother of Cheryl Marie Adams, had visited appellant at the Detention Center on numerous occasions.

The trial judge delivered an oral opinion at the conclusion of the hearing in which he said, *inter alia*:

"I have gone over the entire case and I don't have any difficulty at all in reaching these conclusions.

"One, I am certain that the Jury reached the right decision and I am certain that this Defendant is the man who shot the victim twice on September 22nd of last year, that is to say that he is guilty. I am certain that when the fourteen year old victim told the Police that he shot her that she is telling the truth and when she testified in the District Court and before the Grand Jury that he shot her, she was telling the truth. One of the most telling things to me in this whole case is the fact that when the case was first scheduled for trial, I believe on April 29th I am sure the State's Attorney and

Defense counsel will remember, the day before the date, each of the three of us received a letter signed purportedly by Edith Adams on yellow foolscap, usually found in some lawyer's office and acknowledged before a Notary saying that they weren't coming; that they had enough trouble and didn't want to be bothered anymore. Now, there wasn't a word in there about this man being innocent, not one word and I don't have any doubt that the Defendant in this case made arrangements to keep those people away from the trial. I don't have any doubt at all."

A motion for relief under Maryland Rule 764 b 3 is directed to the sound discretion of the trial court; and from an order overruling such a motion no appeal will lie, *Williams v. State,* 204 Md. 55, 66, 102 A. 2d 714, 719 (1954), unless there was an abuse of discretion. *Blackstone v. State,* 6 Md. App. 404, 406, 251 A. 2d 255, 256 (1969).

It is quite clear in this case no abuse of discretion has been shown.

*Judgment affirmed.*
*Appellant to pay the costs.*